Eva **RAFFUCCI ALVARADO**, et al.,
Plaintiffs, Appellees,

v.

Carmen **SONIA ZAYAS**,
Defendant, Appellant.

Digno C. **GIRAUD RIVERA**,
Plaintiff, Appellee,

v.

Carmen **SONIA ZAYAS**, etc.,
Defendant, Appellant.

Nos. 86–1675, 86–1810.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1987.
Decided April 24, 1987.

---

Marcos Ramirez Lavandero, with whom Ramirez & Ramirez, Hato Rey, P.R., and Hon. Hector Rivera Cruz, Secretary of Justice, Commonwealth of Puerto Rico, were on brief, for defendant, appellant.

Jose Ramon Perez-Hernandez, Old San Juan, P.R., with whom Jorge A. Pierluissi, Jr., Hato Rey, P.R., was on brief for plaintiffs, appellees.

Before BOWNES, Circuit Judge, WISDOM,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BOWNES, Circuit Judge.

In this opinion we decide two interlocutory appeals, which were briefed and argued separately. The cases are two of the many arising from the spate of political discharges that followed the Popular Democratic Party's victory in the 1984 Puerto Rico gubernatorial election. Specifically, we consider whether the Social Services Secretary was entitled to qualified immunity against personal liability for removing two New Progressive Party members from Regional Director positions in the Social Services Department. We hold that qualified immunity should have been granted, and on that basis we vacate the district courts' orders denying motions for summary judgment.

In January 1985 Carmen Sonia Zayas, a member of the Popular Democratic Party, was installed as Social Services Secretary. On March 15, 1985, she removed Eva Raffucci Alvarado and Digno C. Giraud Rivera, both members of the New Progressive Party, as Regional Directors for the Ponce and Guayama Regions, respectively. They were transferred to much lower-paying positions elsewhere in the Social Services Department.

According to Raffucci Alvarado and Giraud Rivera, they were removed as Regional Directors because of their party affiliation. They brought civil rights suits un-

* Of the Fifth Circuit, sitting by designation.

der 42 U.S.C. § 1983 (1982), claiming that their summary demotion violated due process and their first amendment right to associate with the political party of their choice. They seek reinstatement to their former positions, back pay, and damages.[1] Sonia Zayas moved for summary judgment in both cases, claiming she was protected by qualified immunity. Her motions were denied, and she brought this appeal to obtain interlocutory review of the denials of summary judgment on her claims of qualified immunity. *See De Abadia v. Izquierdo Mora*, 792 F.2d 1187, 1188–90 (1st Cir. 1986) (holding that an interlocutory appeal lies from a denial of summary judgment on a qualified immunity claim).

Qualified immunity may shield a government official performing discretionary functions from damages liability in civil rights actions. *Bonitz v. Fair*, 804 F.2d 164, 166 (1st Cir.1986); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "An official is entitled to immunity if, at the time of the challenged action, the statutory or constitutional right allegedly violated was not 'clearly established.'" *Bonitz v. Fair*, 804 F.2d at 166 (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738).

■ Raffucci Alvarado and Giraud Rivera have urged that Sonia Zayas's legal experience be considered as relevant to our analysis of whether the law was clearly established when she removed them. She had been a superior court judge and Dean of the Interamerican University Law School. The standard to be applied in reviewing a qualified immunity claim, however, is not affected by the defendant's particular state of knowledge about the law; the test is "the objective reasonableness of an official's conduct." *Harlow v. Fitzgerald*, 457 U.S. at 818, 102 S.Ct. at 2738. The Supreme Court has expressly rejected broad-ranging inquiries into "the decisionmaker's experiences, values, and emotions" when deciding whether qualified immunity is available. *Id.* at 816, 102 S.Ct. at 2737. "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* at 818, 102 S.Ct. at 2738. The law does not require prescience. *De Abadia v. Izquierdo Mora*, 792 F.2d at 1193. If the law was not clearly established when Raffucci Alvarado and Giraud Rivera were removed, it does not matter that Sonia Zayas may have had superior skills for predicting its future contours.

We first consider the due process claims. In their complaints, Raffucci Alvarado and Giraud Rivera state that they were removed as Regional Directors without a hearing. According to them, this was arbitrary, capricious, and violated statutory protections and constitutional principles of fairness. Sonia Zayas argues that they had no constitutionally protected interest in continued employment, so they could be removed summarily.[2]

■ Summary dismissal violates due process only if the employees "had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Federal constitutional rights to due process are not implicated if the employees served at their employer's "will." *Laureano-Agosto v. Garcia-Caraballo*, 731 F.2d 101, 103 (1st Cir.1984); *Beitzell v. Jeffrey*, 643 F.2d 870, 874 (1st Cir.1981). A claim of entitlement to continued employment is "decided by reference to state law." *Bishop v. Wood*, 426 U.S.

---

**1.** Their complaints also contained pendent local law claims. The only issue before us in this interlocutory appeal, however, is whether Sonia Zayas is entitled to qualified immunity on the federal constitutional claims. The effect of pendent local law claims on the qualified immunity doctrine was neither briefed nor argued.

**2.** Raffucci Alvarado and Giraud Rivera have not briefed or argued the due process claims. In Sonia Zayas's motions for summary judgment, however, she argued that she was entitled to qualified immunity on the due process claims, and she has briefed and argued this contention on appeal. We, therefore, consider the issue to be before us for decision.

341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Under the Puerto Rico Public Service Personnel Act of 1975, Regional Directors hold positions of "trust and confidence," and as such they are subject to "free selection and removal." L.P.R.A. tit. 3, § 1350 (1978).[3] On the basis of this statutory classification, Sonia Zayas reasonably could have concluded that Raffucci Alvarado and Giraud Rivera had no property right in continued employment as Regional Directors, and that they could be summarily dismissed without violating due process. Therefore, because her actions did not violate any clearly established federal due process rights, Sonia Zayas is entitled to qualified immunity on these claims.

■ First amendment protections, however, are not necessarily coextensive with the limits of due process. An employee serving at the will of a state employer may well be shielded by the first amendment from political firing. The law governing first amendment protection against politically motivated dismissal was analyzed recently by this court in *Mendez-Palou v. Rohena-Betancourt*, 813 F.2d 1255 (1st Cir.1987). We adopt that analysis here. We noted that the case law demonstrates that the inquiry into whether a particular position is protected from politically motivated dismissal is a fact-specific one that "makes it difficult in any given case to decide the merits solely on the basis of precedent." *Id.* at 1258. It could hardly be said that under the case law as it existed in 1985 these plaintiffs and others who held positions with similar duties had a clearly established right to retain their offices in the face of a change in the governing political party. As we said in *Mendez-Palou*,

> [t]he nature of the precedent plainly demonstrates that "[a]lthough the law seems clear at either end of the … spectrum, not enough precedent dealing with upper-level governmental positions in the middle of the spectrum ha[d] yet

emerged to enable" the defendant[ ] in the instant cases to determine conclusively whether plaintiffs were entitled to first amendment protection. *De Abadia*, 792 F.2d at 1194 (Campbell, C.J., concurring). Thus, there was no clearly established constitutional protection against patronage dismissal for those individuals whose positions potentially concerned matters of partisan political interest and involved at least a modicum of policy-making responsibility, access to confidential information, or official communication.

*Id.* at 1258–59.

This court recently applied these principles in a case involving the dismissal of a former Social Services Regional Director of the Caguas Region. *Alicea Rosado v. Sonia Zayas*, 813 F.2d 1263 (1st Cir.1987). In that case we held that the Social Services Secretary was entitled to qualified immunity. We see no justification for departing from that precedent, which is, for qualified immunity purposes, indistinguishable from the cases presently before us.

As in *Alicea Rosado*, the complaints in these cases state only that "political affiliation was neither a *de jure* nor a *de facto* job requirement for the effective performance of plaintiff's occupied position in public service." We must therefore go beyond the bare complaint and look at other uncontested facts in the record to address the immunity question. *See Mendez-Palou*, 813 F.2d at 1259–60.

■ The records in these cases include official Job Classification Questionnaires, which are prepared for individual positions and describe their duties. We rely on these documents "because [they] contain[ ] precisely the information we need concerning the position[s'] inherent powers and responsibilities to address the issue of qualified immunity." *Id.* at 1260. The questionnaires for the positions held by Raffucci

---

**3.** Under Puerto Rico law, "[e]very regular employee in a career position who is appointed to a confidential position shall be entitled to be reinstated in a position equal or similar to the last one he held in the career service." L.P.R.A. tit. 3, § 1350 (Supp.1985). This apparently was done with Raffucci Alvarado and Giraud Rivera. Their due process claims are not based on the inadequacy of the positions to which they were reassigned, but on a claim of entitlement to the Regional Director positions.

Alvardo and Giraud Rivera, which are not contested, are functionally identical to each other, and they describe the same duties that this court found in *Alicea Rosado* to indicate "substantial policy-making responsibility." *Id.* at 1265. According to the questionnaires, the Social Services Regional Directors "carry out work of a great executive responsibility and direction in the coordination, direction, supervision and evaluation of the social services programs within a region according to the division of the Social Services Department." They are described as the regional representatives of the Social Services Secretary, who is the head of a department that has an extraordinarily broad charter as "the agency responsible for carrying out the programs of the Commonwealth directed toward the solution or mitigation of the social problems of Puerto Rico." L.P.R.A. § 211b (1982). As Regional Directors, therefore, Raffucci Alvarado and Giraud Rivera had duties that "involved the politically sensitive issue of the provision of social services." *Alicea Rosado*, 813 F.2d at 1266.

Many of the functions described in the questionnaires entail responsibilities that normally would not be required for a position where party affiliation would be irrelevant. The Regional Directors plan, coordinate, and supervise programs adapted to the special needs of their regions. They execute social service programs, evaluate their effectiveness, train personnel and supervise their activities, and control expenses and disbursements. And they are responsible for establishing and maintaining positive relations with citizens, civic groups, and representatives of other service areas.

Furthermore, their classification as "confidential" employees, although not determinative of whether these positions were protected against politically motivated dismissals, "indicates that the position[s] [were] viewed as entailing sensitive responsibilities." *Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258, 262 (1st Cir.1987). According to Puerto Rico law, "[c]onfidential employees are those who intervene or collaborate substantially in the formulation of the public policy, who advise directly or render direct services to the head of the agency...." L.P.R.A. tit. 3, § 1350 (1978). "Within the agency at least, plaintiffs were considered to be at the policymaking end of the spectrum." *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 246 (1st Cir.1986).

In sum, the Regional Directors have significant policymaking and spokesperson functions that are related to partisan political interests. We hold that it would have been objectively reasonable for Sonia Zayas to conclude that Raffucci Alvarado and Giraud Rivera could be removed from their positions on the basis of party affiliation; it was not clearly established that she could not do so. She is entitled to qualified immunity from damages liability on the first amendment claims, as well as on the due process claims.

*Vacated and remanded with instructions to enter summary judgment for defendant in both cases on the issue of damages liability on the federal claims.*

TORRUELLA, *Circuit Judge* (Dissenting).

For the reasons stated in my dissenting opinion in *Alicea Rosado v. Carmen Sonia Zayas*, 813 F.2d 1263 (1st Cir.1987) (Torruella, J., dissenting), I cannot concur in the reasoning or outcome of this opinion. This court continues to ignore the clear holding of the Supreme Court in *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and to rely on Puerto Rican statutory law for labels ("confidential," *ante* at 822; "policy-making," *ante* at 821) discarded by that case. *Id.* at 518, 100 S.Ct. at 1294. Yet, while leaning on such statutes the majority overlooks, at the same time, the Puerto Rico Supreme Court's interpretation of that same law. *Franco v. Municipality of Cidra*, 113 D.P.R. 260 (1982) (discharge of confidential employee for political affiliation invalid); *Clemente Gonzalez v. Department of Housing*, 114 D.P.R. 763 (1983); *Colon v. Urban Renewal and Housing Corporation*, 84 J.T.S. 52 (June 4, 1984). Furthermore, this court continues to apply a different standard in

Puerto Rican political discharge cases, in determining what is "clearly established law," than it does in other civil rights cases, *see Bonitz v. Fair,* 804 F.2d 164 (1st Cir.1986), a standard that is contrary to the ruling in *Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–38, 73 L.Ed.2d 396 (1982).

Additionally, I disagree with the majority's conclusion that appellant has met the burden of proof established by *Branti.* This burden requires that "the hiring authority ... demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295. There is no such evidence on the record in either case. *See de Choudens v. Government Development Bank of Puerto Rico,* 801 F.2d 5, 10 (1st Cir.1986) (en banc). A reading of the questionnaires, the only evidence on the record allegedly in support of appellant's motions for summary judgment, does *not* overcome the *heavy* burden that must be met by appellant. *See Elrod v. Burns,* 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976); *Buckley v. Valeo,* 424 U.S. 1, 94, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976). This is particularly the case where, as here, appellant has not even made an affirmation in support of the motions for summary judgment that there was *any* reliance, or even knowledge, by appellant of the contents of the questionnaires in either case. "In the instant case, care must be taken not to confuse the interest of partisan organizations with governmental interests. Only the later will suffice." *Elrod,* 427 U.S. at 362, 96 S.Ct. at 2684.

Last but not least, there is a serious question whether there exists interlocutory appellate jurisdiction to consider these matters. There are outstanding state pendent *damage* actions which are unaffected by the motions for summary judgment. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). Because the *personal* damage actions will remain to be litigated together with the claims for equitable relief, I have a substantial doubt that we have interlocutory appellate jurisdiction. *See also Bever v.*

*Gilbertson,* 724 F.2d 1083, 1086–87 (4th Cir.1984), *cert. denied sub. nom. Rockefeller v. Bever,* 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984). *Cf., Harlow,* 457 U.S. at 819 n. 34, 102 S.Ct. at 2739 n. 34.

I therefore dissent.