UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 96-1701

MAGALY ROLDAN-PLUMEY,

Plaintiff - Appellant,

v.

HIRAM E. CEREZO-SUAREZ,
PERSONALLY AND AS COMMISSIONER FOR
MUNICIPAL AFFAIRS, ET AL.,

Defendants - Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. P rez-Gim nez, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Selya and Stahl, Circuit Judges. 



Carlos A. del Valle-Cruz, with whom Juan Rafael Gonz lez- 
Mu oz and Gonz lez Mu oz & Qui onez Tridas were on brief for 
appellant.
Sylvia Roger-Stefani, Assistant Solicitor General, 
Department of Justice, with whom Carlos Lugo-Fiol, Solicitor 
General and Edda Serrano-Blasini, Deputy Solicitor General, were 
on brief for appellees.



June 4, 1997


TORRUELLA, Chief Judge. On May 4, 1994, Plaintiff- TORRUELLA, Chief Judge. 

Appellant Magaly Rold n-Plumey ("Rold n") brought this Section

1983 suit against Defendants-Appellees Hiram Cerezo-Su rez

("Cerezo"), Commissioner of Municipal Affairs for Puerto Rico,

and Sandra Valent n ("Valent n"), Director of the Legal Division

of the Office of the Commissioner of Municipal Affairs ("OCMA"),

in their individual and official capacities. The suit alleged

that appellees, in violation of Rold n's First Amendment rights,

dismissed her from her position of Hearing Examiner (also

referred to as Examining Officer) because of her political

beliefs. The district court granted appellees' motion for

summary judgment on the ground that party affiliation is an

appropriate requirement for the effective performance of the

position of Hearing Examiner and, consequently, that appellees

were entitled to dismiss Rold n on those grounds. See Opinion 

and Order, March 5, 1996, at 10. Having ruled on the merits, the

district court did not address, inter alia, whether appellees 

were entitled to qualified immunity.

In contrast to the lower court, we find that the

inherent duties of Rold n's position do not demonstrate

policymaking attributes sufficient to subject Rold n to discharge

based on her political beliefs and, accordingly, reverse the

entry of summary judgment. Moreover, having found cause to set

aside the judgment on the merits, we address appellees' argument

that they are entitled to qualified immunity and find it wanting.

-2-

BACKGROUND BACKGROUND

On March 1, 1992, Rold n accepted the position of

Hearing Examiner with the Office of the Commissioner of Municipal

Affairs. The OCMA is the main regulatory agency of Puerto Rico's

municipalities and is charged with uncovering, investigating, and

reporting to municipal mayors any irregularities in the

municipalities' management. P.R. Laws Ann. tit. 21, 4909

(1995). The office is further obligated to provide various forms

of "technical and professional assistance to the municipalities

relating to their organization, administration, functions and

operation." Id. 4902. The Commissioner developed a 

confidential and trust employee plan under which employees in the

OCMA were classified in accordance with the Puerto Rico Public

Service Personnel Act, P.R. Laws Ann. tit. 3, 1301 et seq. The 

plan, developed by Cerezo's predecessor as Commissioner, Ismael

Pag n-Colberg, designated the position of "examining officer" as

a trust position. According to this document, the OCMA positions

designated as trust or confidence positions were only "[t]hose

positions whose holders intervene or collaborate substantially in

the formulation of public policy, which directly advise or render

direct services to the Commissioner of the Office of the

Commissioner of Municipal Affairs." Def. Exh. IV to Motion to

Summary Judgment.

The classification, or job description, for the

position of "Examining Officer" sets forth the position's duties

as follows:

-3-

DUTIES OF POSITION

Professional and technical work that requires
great knowledge of the principles and the
practice of law and the ability to direct
research procedures leading to an
adjudicative determination.

1. Holds administrative hearings required
by the Autonomous Municipalities Act and
any other necessary one[s] to carry out
the duties assigned to the Commissioner.
Regulates the procedures during the
[performance] of the same.

2. Takes oaths and declarations, issues
summons for the appearance of witnesses
and the filing of reports, documents and
other evidence necessary to solve cases.

3. Evaluates evidence and comes to
conclusions of facts and law.

4. Carries out legal studies for the
solution of cases.

5. Issues reports with his conclusions and
recommendations to the Commissioner.

6. Carries out other assigned related
duties.

Def. Exh. V to Motion for Summary Judgment.

On November 4, 1992, Pedro Rossell ("Rossell "), a

member of the New Progressive Party ("NPP"), was elected

governor. In March 1993, Rossell appointed Cerezo Commissioner

of Municipal Affairs. In April 1993, Cerezo appointed Valent n

to head the Legal Division of the OCMA. On May 6, 1994, Rold n

received a dismissal letter effective that same date.

STANDARD OF REVIEW STANDARD OF REVIEW

We review the grant of summary judgment de novo, 

viewing the facts, and drawing all reasonable inferences, in the

-4-

light most favorable to the non-movant, here Rold n, and

affirming summary judgment only "if no genuine issue of material

fact exists." O'Connor v. Steeves, 994 F.2d 905, 906-07 (1st 

Cir. 1993).

DISCUSSION DISCUSSION

I. Political Discharge Claim I. Political Discharge Claim

We turn first to the grounds on which the district

court granted summary judgment to Cerezo and Valent n. More than

twenty years ago, a plurality of the Supreme Court held that

governmental employers may not discharge an employee because of

her political affiliation without showing a governmental interest

sufficiently vital to outweigh the employee's First Amendment

right to association. Elrod v. Burns, 427 U.S. 347, 355-56, 362 

(1976). The plurality found that the government's interest in

effective implementation of its policies can be achieved "by

limiting patronage dismissals to policymaking positions." Id. at 

372. Justice Stewart's concurrence gave the Court a majority for

the proposition that nonpolicymaking, nonconfidential employees

should not be discharged on the basis of their political beliefs.

Id. at 374-75 (Stewart, J., concurring in the judgment). 

The Court next attempted to define the contours of the

prohibition on political discharge in Branti v. Finkel, 445 U.S. 

507 (1980). Instead of applying Elrod's policymaking inquiry, 

the Branti Court relied upon a finding that political affiliation 

is not an appropriate requirement for the effective performance

of the position of assistant public defender. Id. at 518-19. 

-5-

The Branti Court again, however, imposed the burden on the 

governmental body seeking dismissal: "[U]nless the government

can demonstrate 'an overriding interest' 'of vital importance'

requiring that a person's private beliefs conform to those of the

hiring authority, his beliefs cannot be the sole basis for

depriving him of continued public employment." Id. at 515-16 

(citations omitted). Of fundamental importance is the idea that

"conditioning continued public employment on an employee's having

obtained support from a particular political party violates the

First Amendment because of 'the coercion of belief that

necessarily flows from the knowledge that one must have a sponsor

in the dominant party in order to retain one's job.'" Rutan v. 

Republican Party of Illinois, 497 U.S. 62, 70 (1990) (quoting 

Branti, 445 U.S. at 516). 

More recently, in Rutan v. Republican Party of 

Illinois, the Court extended the reach of the Elrod-Branti 

doctrine to politically motivated promotions, transfers, and

recalls. Rutan, 497 U.S. at 70. The Court reaffirmed the heavy 

burden on government employers to show that the use of "patronage

practices are narrowly tailored to further vital government

interests." Id. at 74. The Court reiterated that 

[a] government's interest in securing
effective employees can be met by
discharging, demoting, or transferring staff
members whose work is deficient. A
government's interest in securing employees
who will loyally implement its policies can
be adequately served by choosing or
dismissing certain high-level employees on
the basis of their political views.

-6-

Id. Unless a position is one that requires policy 

implementation, or is confidential in nature (a claim that

appellees here do not make and to which we need not allude

hereafter), a government employer must rely on traditional

discharge criteria.

Based on this case law, this circuit has developed a

two-part test for discerning when discharge based on political

affiliation is permissible. First, we inquire into whether the

discharging agency's functions entail "'decision making on issues

where there is room for political disagreement on goals or their

implementation.'" O'Connor, 994 F.2d at 910 (quoting Jim nez 

Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. 

1986)). If so, we next determine "whether the particular

responsibilities of the plaintiff's position, within the

department or agency, resemble those of a policymaker, privy to

confidential information, a communicator, or some other office

holder whose function is such that party affiliation is an

equally appropriate requirement for continued tenure." Id. 

(internal quotation marks omitted); see also Jim nez Fuentes, 807 

F.2d at 241-42. In reviewing this second prong, we have looked

to "relative pay, technical competence, power to control others,

authority to speak in the name of policymakers, public

perception, influence on programs, contact with elected

officials, and responsiveness to partisan politics and political

leaders." O'Connor, 994 F.2d at 910. 

A. Agency functions A. Agency functions

-7-

In her opposition to appellees' motion for summary

judgment, Rold n conceded that OCMA is an agency whose functions

require "'decision making on issues where there is room for

political disagreement on goals or their implementation.'" Id. 

For the purposes of this appeal, therefore, we consider the first

prong satisfied.

B. Whether the position involves policymaking B. Whether the position involves policymaking

Under the second prong, the question is whether the

responsibilities of the position of Hearing Examiner resemble "a

policymaker, a privy to confidential information, a communicator,

or some other office holder whose function is such that party

affiliation is an equally appropriate requirement." Jim nez 

Fuentes, 807 F.2d at 242. We have held time and again that a 

court, in making this determination, is to look only to the

duties inherent to the position and is not to consider the actual

functions of either past or present officeholders. See id.; see 

also O'Connor, 994 F.2d at 911 ("[T]he analysis must focus upon 

the 'powers inherent in a given office, as opposed to the

functions performed by a particular occupant of that office.'");

Cordero v. Jes s-M ndez, 867 F.2d 1, 9 (1st Cir. 1989); Romero 

Feliciano v. Torres Gaztambide, 836 F.2d 1, 3 (1st Cir. 1987); De 

Abadia v. Izquierdo Mora, 792 F.2d 1187, 1192 (1st Cir. 1986). 

We consider the job description to be the best, and sometimes

dispositive, source for determining the position's inherent

functions. See Ortiz Pi ero v. Rivera Arroyo, 84 F.3d 7, 13 (1st 

Cir. 1996) (stating that "written, signed job descriptions may

-8-

provide highly probative evidence as to the responsibilities

inherent in a particular government position, and may even prove

dispositive"); Romero Feliciano, 836 F.2d at 3 (recognizing that 

"we have considered the OP-16 dispositive in . . . Puerto Rico

political discrimination cases"); M ndez Palou v. Rohena 

Betancourt, 813 F.2d 1255, 1260 (1st Cir. 1987) ("Whenever 

possible, we will rely upon this document because it contains

precisely the information we need concerning the position's

inherent powers . . . .").

The Hearing Examiner job description details five

specific responsibilities and designates a further responsibility

to "carr[y] out other assigned related duties." The five well-

defined responsibilities make clear that the position of Hearing

Examiner leaves little room for free-ranging actions independent

of their limited scope. The narrow duties require application of

technical and professional skills in evaluating facts and

researching law. They are not broad and open-ended, and do not

leave room for discretionary policymaking or policy

implementation. Nor are they "hazily defined." See Alfaro de 

Quevedo v. De Jes s Schuck, 556 F.2d 591, 593 (1st Cir. 1977). 

The narrowly circumscribed duties permit the officeholder the

opportunity to identify and investigate irregularities, but do

not convey power or discretion to take any action as a result of

these findings. Indeed, in their brief, appellees recognize that

"plaintiff's position as described in her job description seemed

-9-

to involve technical and professional skills." Appellees' Brief

at 20.

In addition, the limited nature of the position differs

substantially from most of those positions for which we have

previously found political affiliation to be an appropriate

requirement. For instance, in Agosto-de-Feliciano v. Aponte- 

Roque, 889 F.2d 1209, 1213 (1st Cir. 1989), we reviewed four 

positions to determine the appropriateness of political

affiliation. The job description of the first position listed

twenty-six responsibilities including supervising employees,

representing the regional director at public meetings, and

overseeing the respective office when the director was absent.

Id. The second position under review required the officeholder 

to act as a liaison between the Department of Public Education

and private schools, to coordinate a teaching program in the

project school, and to direct a regionwide committee on school

organization. Id. The third position consisted of twenty-three 

responsibilities, requiring the officeholder to survey needs,

develop work plans, evaluate curricula and training, manage

vocational education, and supervise student organizations. Id. 

The position also included a supervisory component. Id. 

Finally, the job description for the fourth position listed

twenty-one broadly stated duties, including budget

administration, oversight of programs relating to school needs,

transportation, and student services, and evaluation of

personnel. Id. at 1214-15. These high-level positions, with 

-10-

their numerous, loosely defined responsibilities, allowed the

officeholders considerable power and discretion in the management

of Puerto Rico's Department of Education. They included

oversight, evaluation, and revision of programs as well as

supervision of personnel. Some allowed the officeholder to act

in place of department heads. The circumscribed list of

responsibilities of the position of Hearing Examiner grants the

officeholder no such broadly defined powers.

In O'Connor v. Steeves, we found that the position of 

superintendent, which gave the officeholder responsibility for

the administration of all departments of city government and

required policymaking, acting as a city representative, and

supervising personnel, all duties absent here, was one for which

political affiliation was an appropriate consideration.

O'Connor, 994 F.2d at 911. 

In the seminal political discrimination case, Jim nez 

Fuentes v. Torres Gaztambide, 807 F.2d 236 (1st Cir. 1986) (en 

banc), this court reviewed the claims of plaintiffs who had been

discharged from their positions as Regional Directors of the

Puerto Rico Urban Development and Housing Corporation ("CRUV"),

attached to the Department of Housing of the Commonwealth of

Puerto Rico. Id. at 237-38. Approximately 3,000 of the 3,600 

CRUV employees served under the disputed positions. Id. at 243. 

The job descriptions consisted of twenty duties, including

directing, planning, and supervising the operational activities

of the entire region, developing and implementing new programs or

-11-

discerning ways to improve existing programs, serving as

spokesperson for the Executive and Associate Directors, and

controlling the region's budget, all duties of a high-level

policymaker. Id. at 244; see also Raffucci Alvarado v. Zayas, 

816 F.2d 818, 821-22 (1st Cir. 1987) (finding position of Social

Services Regional Director sufficiently entailed policymaking to

render political affiliation relevant).

The position at issue here is readily distinguishable

from those at issue in Jim nez Fuentes and O'Connor, and is more 

akin to the position of Internal Auditor, which we addressed in

Cordero v. Jes s-M ndez, 867 F.2d 1 (1st Cir. 1989). The 

position of Internal Auditor did not require the officeholder to

engage in policymaking decisions, but instead required that the

auditor investigate the financial records of a municipality and

make a report to the Mayor and Comptroller. Id. at 18. The 

internal auditor had no authority to correct the mistakes he was

charged to investigate. Id. 

As in Cordero, the position at issue here is that of a 

mere "technocrat." Id.; see also De Choudens v. Government Dev. 

Bank of Puerto Rico, 801 F.2d 5, 9-10 (1st Cir. 1986). A Hearing 

Examiner is charged only with investigating and holding hearings

into possible irregularities in municipal functions, and

reporting them to the Commissioner, in whom authority rests to

take action. Considering these five enumerated duties, we find

that they require technical and professional skills and do not

provide discretion to formulate or implement policy. See 

-12-

generally De Choudens, 801 F.2d at 9-10. Accordingly, political 

affiliation is not an appropriate requirement for the position.

Moreover, a review of the indicia we have typically

considered material to this determination further suggests that a

Hearing Examiner is not a policymaker. With regard to relative

pay, the salary for Hearing Examiner is the fifth highest of the

13 levels on the OCMA pay scale, not including the Commissioner.

The documents submitted on summary judgment do not indicate the

number of employees filling each level of the scale. Thus, while

the position is ranked fifth, a significant number of actual

employees may be paid more than the Hearing Examiner. Moreover,

the trust classification is fifth-tier, among eleven trust

positions in the OCMA. Although the position is of a quasi-

adjudicative nature, it does not require that an officeholder

possess a law degree. The position carries no supervisory

responsibilities. The duties neither require any public

appearances nor grant authority to speak on the Commissioner's

behalf. Contact with elected officials appears to take place

only in the context of a hearing, and in no other context does a

Hearing Examiner act as a public spokesperson for or

representative of her agency.

Appellees attempt to maneuver around the job

description's inherent duties by pointing to item number 61 on

the job description, claiming that the possibility of being

 

1 Item number 6 states that the office holder "[c]arries out
other assigned duties."

-13-

assigned related tasks transforms the position into one with

broad powers. The summary judgment record indicates that

appellees presented two exhibits, in addition to the job

description, to support this contention. The first of these,

Exhibit VI, appears to be a listing of correspondence received by

the Office of Legal Affairs containing inquiries regarding

various municipal concerns. These inquiries were assigned to

Rold n for resolution. The last date on which any of the tasks

on this list were assigned to Rold n is September 24, 1992. The

other exhibit, Exhibit VII, suggests that, as of July 28, 1992,

Rold n was assigned by Cerezo's predecessor to monitor the status

of amendments to the Autonomous Municipalities Act. We note that

appellees did not argue to the district court, as they do on

appeal, that the duties set forth in Exhibits VI and VII were

assigned as "other [] related duties" pursuant to item six of the

job description, and thus fall within the scope of the court's

analysis of "inherent duties." Nevertheless, because the

district court took into consideration the documents in Exhibits

VI and VII, we address appellees' contention here.

In reviewing the nature of the tasks assigned to Rold n

by Cerezo's predecessor, it is apparent that they were not

related to the inherent duties of Hearing Examiner. Instead,

these exhibits are of the very type we have consistently held are

not to be considered in the process of determining whether a

position entails policymaking. We look only to the inherent

duties of the position under review and do not consider the

-14-

actual tasks performed by a present or past officeholder. See 

O'Connor, 994 F.2d at 911; Jim nez Fuentes, 807 F.2d at 242. The 

inherent duties of a Hearing Examiner relate only to

investigating and administering hearings regarding irregularities

and do not encompass providing legal advice, or analyzing,

developing, or advising the Commissioner on proposed or actual

legislation. We certainly cannot allow a catch-all provision

such as that found in Item 6 to convert all assigned tasks into 

inherent duties. We conclude that the duties set forth in

Exhibits VI and VII, which were assigned to Rold n during her

tenure as a Hearing Examiner, are not tasks related to her

position and thus cannot be properly characterized as assigned in

accordance with item number 6. They are actual duties performed

by a past officeholder, and not inherent duties.

We recognize that, in past cases, we have granted a

modicum of deference to the Puerto Rico legislature's designation

of a particular position as "trust" or "confidential." See, 

e.g., Figueroa-Rodr guez v. L pez-Rivera, 878 F.2d 1478, 1481 

(1st Cir. 1989); Juarbe-Angueira v. Arias, 831 F.2d 11, 14 (1st 

Cir. 1987); Raffucci Alvarado, 816 F.2d at 822; Jim nez Fuentes, 

807 F.2d at 246. We accorded deference because

(a) Puerto Rico's own civil service system
permits a fairly small number of positions
(no more than 25 per agency) to be classified
as confidential (i.e., potentially subject to 
politically-based discharge), P.R. Laws Ann.
tit. 3, 1351 (1978 & Supp. 1987); (b) the
personnel law bases the classification of a
confidential position on criteria similar to
those enumerated in Elrod and Branti, 
(whether the job involves "formulation of

-15-

public policy," P.R. Laws Ann. tit. 3, 
1350, or "direct service to the head or
subhead of the agency which require a high
degree of personal trust," P.R. Personnel
Bylaws: Areas Essential to the Merit
Principle, 5.2 (1976)); and (c) the
legislators and administrators are more
familiar with the issues and subjects that
potentially may affix a particular job at a
particular time with a "political charge."

Figueroa-Rodr guez, 878 F.2d at 1481. Nevertheless, we decline 

to grant deference to the designation of Hearing Examiner as a

"confidential" position here, when the plan that designated the

position as confidential took into consideration the five

specific duties discussed above and merely suggested that the

Hearing Examiner "has broad and considerable freedom to exercise

initiative and his own judgment in the performance of his work."

See Def. Exh. IV to Motion for Summary Judgment. We have already 

considered the job duties of the position above and found them

insufficient to indicate that the position entails policymaking.

Having "freedom to exercise . . . [one's] judgment in the

performance of [one's] work" does not go beyond our earlier

consideration of the position and does not support appellees'

contention that the position involves the use of broad

discretion. In addition, that the same plan labels drivers and

at least two tiers of secretaries as trust or confidential

employees suggests that these categories are overly broad.

Based on the summary judgment record, we hold that the

position of Hearing Examiner is not one for which party

affiliation is an appropriate requirement.

II. Qualified Immunity II. Qualified Immunity

-16-

In their request for summary judgment below, appellees

contended, as they do on appeal, that they are entitled to

summary judgment on the basis of qualified immunity. The

doctrine of qualified immunity protects defendants in their

individual capacities from liability for money damages.

"Qualified immunity shields government officials performing

discretionary functions from civil liability for money damages

when their conduct does not violate 'clearly established'

statutory authority or constitutional rights of which a

reasonable person would have known." Nereida-Gonz lez v. Tirado- 

Delgado, 990 F.2d 701, 704 (1st Cir. 1993). In the context of 

political discrimination charges, "a defendant enjoys 'qualified

immunity' as long as the job in question 'potentially concerned

matters of partisan political interest and involved at least a

modicum of policymaking responsibility, access to confidential

information, or official communication.'" Figueroa-Rodr guez, 

878 F.2d at 1480 (quoting M ndez-Palou v. Rohena-Betancourt, 813 

F.2d 1255, 1259 (1st Cir. 1987)).

In earlier political discrimination cases, we found

defendants entitled to qualified immunity because their allegedly

unconstitutional actions took place prior to the development of

clearly established law in this area. See, e.g., Nereida- 

Gonz lez, 990 F.2d at 704 (granting defendants qualified immunity 

because prior to 1989, a period that encompassed defendants'

allegedly unconstitutional demotions and transfers, it was not

clear whether Elrod and Branti applied); Valiente v. Rivera, 966 

-17-

F.2d 21, 23 (1st Cir. 1992) (same); N ez-Soto v. Alvarado, 918 

F.2d 1029 (1st Cir. 1990) (state of the law in political

discrimination cases was not clearly established in 1985);

Figueroa-Rodr guez, 863 F.2d at 1040 (recognizing that although 

Elrod and Branti clearly prohibited discharge of non-policymaking 

state employees for partisan reasons, this circuit had yet to

delineate the scope of positions for which political affiliation

was appropriate); De Abadia, 792 F.2d at 1190 (noting that Elrod 

and Branti marked a dramatic departure from prior law and further 

observing that an "official cannot be expected to predict the

future course of constitutional law" (internal quotation marks

omitted)). This case is different. Appellees discharged Rold n

on May 6, 1994. The contours of the law regarding discharge

based on party affiliation grew much clearer in the late 1980s

and early 1990s. By 1993, this circuit had decided two waves of

political discrimination cases. At the time appellees discharged

Rold n, this circuit's law regarding discharge based on political

discrimination was indeed clearly established.

To be sure, the law may still be blurred around the

edges. But this is not a borderline case. In determining

entitlement to the qualified immunity defense in the political

discrimination context, we look only to the inherent duties of a

position and ask whether the defendant could reasonably believe

the position in question was one that "'potentially concerned

matters of partisan political interest and involved at least a

modicum of policymaking responsibility, access to confidential

-18-

information, or official communication.'" Figueroa-Rodr guez, 

878 F.2d at 1480. We have already found that the inherent duties

of the position were limited to discrete, technical

responsibilities that did not involve policymaking or policy

implementation. We do not believe that appellees could

reasonably believe that the five specified duties of the position

in any way provided Rold n with discretion to devise or implement

policy. Assigning her with a duty related to those functions 

would not expand her discretion in the position.

As discussed above, the additional tasks assigned to

Rold n, on which appellees rely, were not inherent to the

position nor can they be bootstrapped into the position through

the device of item number 6. That the defendants might have

considered the additional duties assigned to Rold n as part of

the duties inherent in the position of Hearing Examiner appears

unreasonable based on the record at the summary judgment stage.

We note that should defendants muster convincing evidence at

trial to show that the function of a typical Hearing Examiner 

includes following the status of legislation and providing legal

assistance directly to the municipalities and that the position

has traditionally been perceived as encompassing these tasks,

they may or may not be entitled to qualified immunity. They are

not, however, entitled to summary judgment on qualified immunity

grounds.

Appellees suggest that one of the cases on which the

district court relied, Alfaro de Quevedo v. De Jes s Schuck, 556 

-19-

F.2d 591 (1st Cir. 1977), is analogous to the instant case and

warrants the opposite conclusion. The district court also relied

on another case that may seem to involve a position similar to

that of a Hearing Examiner. See Gonz lez-Gonz lez v. Zayas, 878 

F.2d 1478 (1st Cir. 1989) (en banc). Those cases are

distinguishable on two grounds.

First, the positions at issue in those cases involved

considerable discretion to make and implement policy. The

position at issue in Alfaro de Quevedo, the Director of the 

Office of Criminal Justice, required, inter alia, the 

officeholder to advise "the Secretary of Justice on all pending

legislation affecting crimes and law enforcement," id. at 593, 

draw up proposed legislation, prepare an annual budget, supervise

the staff of the Office of Criminal Justice, and prepare a

Proposed Code of Criminal Justice for Puerto Rico. Id. The 

position "gave [the officeholder] a broad discretion to carry out

hazily defined purposes and to render advice to the Secretary in

an area that is far from noncontroversial." Id. at 593. The 

position at issue in Gonz lez-Gonz lez was that of the Director 

of the Board of Appeals of Puerto Rico's Department of Social

Services. See Gonz lez-Gonz lez, 878 F.2d at 1482. The position 

duties were, among others, to supervise 31 employees who worked

for the Board, to establish procedures to hold hearings on

appeals, to analyze and make final decisions on all appeals, to

prepare an annual budget, and to recommend rule changes to the

Directors of the various Social Services programs. Id. In 

-20-

addition to any adjudicatory tasks, this position entailed broad

administrative, policymaking, and supervisory duties. Id. at 

1483. As our analysis indicates, the broad discretion inherent

in these duties is not present in the case before us.

Second, Gonz lez-Gonz lez was dismissed from his post

in 1985 and Alfaro de Quevedo resigned in 1973. When the

defendants in those cases ousted the plaintiffs, the state of the

law with respect to political firings was poorly defined. The

state of the law at the time of the discharge in this case had

developed markedly since the two opinions relied upon below.

Because we must consider whether appellees violated a clearly

established constitutional right of which a reasonable person

would have been aware, at the time the adverse employment action

was taken, the outcome of these two cases is not controlling on

the issue of qualified immunity.

We also recognize that in prior cases, we have granted

qualified immunity partially because a defendant might mistakenly

rely on the position's status as "confidential" or "trust" under

the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit.

3, 1301 et seq. See, e.g., Figueroa-Rodr guez, 878 F.2d at 

1481 ("[I]n the context of qualified immunity, the fact that the

Commonwealth government had classified a particular job as a

trust or confidence position, makes it more difficult to say that

a Puerto Rican official should have known that the law 'clearly'

forbids dismissal."); Juarbe-Angueira, 831 F.2d at 14 (same); 

Raffucci Alvarado, 816 F.2d at 821-22 (same). Based on our 

-21-

discussion of the manner in which this and other OCMA positions

were classified, we do not believe that defendants could have

reasonably relied on this designation in determining that their

discharge of Rold n for political reasons was consonant with her

constitutional rights.

CONCLUSION CONCLUSION

For the foregoing reasons, we reverse and remand to the reverse remand 

district court for proceedings consistent with this opinion.

-22-