Flavia ALFARO DE QUEVEDO,
Plaintiff-Appellee,

v.

Francisco DE JESUS SCHUCK,
Defendant-Appellant.

No. 76–1311.

United States Court of Appeals,
First Circuit.

Argued Feb. 15, 1977.

Decided June 3, 1977.

Salvador Antonetti, San Juan, P. R., with whom Fiddler, Gonzalez & Rodriguez, San Juan, P. R., was on brief, for appellant.

Harvey B. Nachman, Santurce, P. R., for appellee.

Before COFFIN, Chief Judge, VAN OOS-TERHOUT * and INGRAHAM,** Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendant Francisco de Jesus Schuck, Secretary of Justice of the Commonwealth of Puerto Rico, appeals from a judgment rendered in the United States District Court for the District of Puerto Rico in favor of plaintiff Flavia Alfaro de Quevedo on a claim that she was discharged from public employment in violation of her first amendment rights to political association. The district court determined that plaintiff had established her claim under 42 U.S.C. § 1983 and awarded damages and attorneys' fees in the aggregate amount of $12,000.00.[1]

As a result of elections held in Puerto Rico in November 1972, the incumbent New Progressive Party was swept from office by the Popular Democratic Party. Plaintiff, an attorney, was employed at the time as

* Of the Eighth Circuit, sitting by designation.

** Of the Fifth Circuit, sitting by designation.

1. The district court dismissed plaintiff's action with respect to two other named defendants and also denied plaintiff's request for reinstatement as against the appellant Secretary. Plaintiff has not cross-appealed, and the district court's resolution of these aspects of the controversy is accordingly final.

director of the Office of Criminal Justice, a division of the Commonwealth's Department of Justice. Some six months after the change in administration, the new Secretary of Justice, appellant herein, accepted plaintiff's resignation, which had been tendered much earlier in the year. The district court found that such acceptance was tantamount to a dismissal and that the dismissal was for political reasons. The Secretary contests both of these findings on appeal, but, in view of our disagreement with the district court on a third issue, we need not disturb either of these initial findings.

Essential to the district court's judgment is its finding that plaintiff's position was not a policymaking one. Under the law and the evidence, we are convinced that it was and accordingly reverse.

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court held that "a nonpolicymaking, nonconfidential government employee [may not] be discharged . . . from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690 (Stewart, J., concurring in the judgment.)[2] That decision, however, does not favor us with a majority opinion. Two justices joined Justice Brennan's long plurality opinion. Justice Stewart, joined by Justice Blackmun, concurred briefly in the judgment. Three justices dissented. Justice Stevens did not participate. We need not pause long, however, to reflect upon the differences which separated the justices, for it is clear that the opinion of the Brennan plurality represents the outermost limit of the *Elrod v. Burns* restriction on partisan dismissals, and it is also clear, in our opinion, that even the Brennan plurality opinion requires a reversal here. For present purposes, then, we may assume, although we do not decide, that a majority

of the Court would in a proper case endorse the views of Justice Brennan, at least in respects here material.

■ We accordingly begin with the premise that partisan dismissals in general infringe basic freedoms of belief and association protected by the first amendment. 427 U.S. at 355–60, 96 S.Ct. 2673 (Brennan, J.). Even so, policymakers may be dismissed, consistently with the Constitution, on partisan grounds. *Id.* at 367–68, 96 S.Ct. 2673. This is not because policymakers lack first amendment rights. Rather, it is because the first amendment interests in such cases are outweighed by "the need for political loyalty of employees . . . to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Id.* at 367, 96 S.Ct. at 2687. The vital inquiry is thus whether the particular position at issue is a policymaking position, and the nature of the responsibilities involved is critical to such inquiry.[3] *Id.* Employees with narrow responsibilities and those who perform limited and well-defined tasks will seldom be considered policymakers, *id.* at 367–68, 96 S.Ct. 2673, especially if their duties are not the subject of public controversy. On the other hand, a new administration should not be forced to rely on advisers of opposing political views. *Id.* at 368, 96 S.Ct. 2673. And similar considerations apply to those formulating plans for the implementation of broad goals. *Id.*

■ The district court ultimately found that plaintiff enjoyed "no policy making power nor any relationship of trust and confidence." In light of the relevant legal principles set forth above and the pertinent evidence summarized below, we disagree with the conclusion of the district court.

---

2. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .'" *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977).

3. The parties have discussed at some length the question whether plaintiff's position was "exempt" or "noncompetitive" under the Commonwealth's personnel law. While this law may provide some guidance, the question of who is and who is not a policymaker is ultimately a question of federal law.

As already noted, plaintiff was employed as director of the Commonwealth's Office of Criminal Justice. In that position she was under the direct supervision of the Secretary. The nature of the duties entrusted to her are accurately set forth in the district court's own findings of fact. We quote findings 9 and 10 in full (footnotes omitted):

9. As described in the testimony of the plaintiff and Undersecretary of Justice, the plaintiff's duties consisted of advising the Secretary of Justice on all pending legislation affecting crimes and law enforcement; research in all areas affecting the Department; counseling the Secretary in his appearance before legislative committees; preparing annual proposals of work for the Office of Criminal Justice that had to be approved both by the Secretary of Justice and the Crime Commission; continually reading, briefing and synopsizing current Federal and State decisions of importance in the field of criminal justice; circulating said briefs to the district attorneys, Insular and Federal judges in Puerto Rico; preparing an annual budget; maintaining a separate library; supervise the staff of the Office of Criminal Justice, which consisted of five lawyers, five secretaries, a librarian and a janitor-messenger; and, to undertake any other research and written assignment given by the Secretary, Undersecretary or Assistant Secretaries of Justice.

10. In March of 1972, the then Secretary of Justice, Wallace Gonzalez-Oliver, assigned the plaintiff the personal responsibility of preparing a Proposed Code of Criminal Justice for Puerto Rico. This was in addition to all of the aforementioned duties, and required much work at home. The plaintiff delivered her final draft of this project on December 31, 1972.

These findings are amply supported by evidence, including plaintiff's own testimony. Also of telling significance is a "classification questionnaire" of the Commonwealth's Office of Personnel, received in evidence without objection, which described the broad scope of plaintiff's duties in considerable detail. A translation of a substantial portion of this questionnaire is appended to this opinion as an appendix.

A careful review of the entire record leads to but one conclusion. Plaintiff's office did not have strictly cabined duties. When the Secretary became interested in some broad area of criminal law, such as conspiracy or obscenity, plaintiff's office would study the area and draw up proposed legislation. Plaintiff accompanied earlier Secretaries to legislative hearings on criminal laws. Much of her time was devoted to drafting an entirely new penal code for the Commonwealth. Under her successor, the office has undertaken a wide variety of new tasks. In short, plaintiff's job gave her a broad discretion to carry out hazily defined purposes and to render advice to the Secretary in an area that is far from noncontroversial.[4]

The district court's ultimate finding that plaintiff enjoyed no policymaking power or relationship of trust and confidence is not supported by the evidence as a whole and is inconsistent with the district court's own specific factfindings set forth above. Under any proper legal standard, it is clearly erroneous. *See Rivera Morales v. Benitez de Rexach*, 541 F.2d 882 (1st Cir. 1976). The Secretary was entitled to a person in plaintiff's position who would enthusiastically pursue the policies of the new administration.

The judgment appealed from is reversed. The cause is remanded to the district court for further proceedings not inconsistent with the views expressed herein.

*Reversed.*

---

4. Admittedly, the appellant Secretary did not seek the amount of advice from plaintiff that his predecessors sought from her or that he sought from her successor. Nevertheless, as the Secretary rightly contends, the relevant issue is whether the *position* was a policymaking one, and the fact that appellant failed to place an extraordinary amount of trust and confidence in plaintiff is clearly beside the point— except insofar as it attests that policymaking positions are wisely exempted from *Elrod v. Burns.*

594

## APPENDIX

OFFICE OF PERSONNEL
   San Juan, Puerto Rico
CLASSIFICATION QUESTIONNAIRE

DEPARTMENT   First Last Name 2nd Last Name Name
   Justice         Alfaro de Quevedo, Flavia

Bureau, Division and Section   Official Title of the Position
   Criminal Justice Office         Director

Address:
   San Juan

### DUTIES OF THE POSITION

Under the direct supervision of the Secretary of Justice, fulfills the following duties:

1. Carries out studies, through orders of the Secretary, on matters of extraordinary complexity and of a controvertible nature in which absolute control of the general legal counselling functions are necessary. Upon these aspects will be responsible to make opinion reports that are necessary for said purposes.

2. Offers technical-judicial guidance to the Secretary of Justice, as required in regards to legal problems that may arise in relation to the Criminal Justice systems in Puerto Rico when and if certain determination is required at the level of the Secretary of Justice.

3. Appears on behalf of the Secretary of Justice before the various Legislative Commissions to report about certain projects of law which have great public importance or that because of their complexity, merit as the Secretary of Justice deems, such intervention.

4. Prepares projects of law and carries out studies on legislation for the purpose of improving, by amending the prevailing legislation or the adoption of new statutes.

5. An essential part of this work is to jointly analyze and discuss with the consultants (penal and sociologist) the technical studies that said public officers carry out in order to establish the legal implications of the same.

6. Appears at hearings to the Legislative Assembly and makes recommendations to the Governor, through the Secretary of Justice, as well as to the legislative chambers, legislative projects on matters related to the Substantive Penal Law and Procedure of Penal Law.

7. Maintain a constant study of the development of the Penal Law doctrine in all of its aspects, to recommend legislation to the Secretary of Justice, legislation according to said developments.

8. Counsels and aids all government organisms, when so requested, in legislative matters of penal character, as well as in its formal or substantive aspects, adopted by these. This counselling duty to government agencies is carried out in coordination with the Criminal Investigation Division and the Crime Stop Commission.

9. Acting in her full initiative and discretion, she organizes, supervises, plans and directs all operational phases of the Criminal Justice Office.

10. Prepares pilot projects of letters and written reports as requested by the Secretary of Justice concerning the administration of the criminal justice system.

11. Prepares the yearly report of the operations carried out by the professional and clerical personnel of the Criminal Justice Office.

12. Prepares the Preliminary and Final request of the Federal Funds called Criminal Justice which includes the preparation of a budget project estimated in $200,000.00.

13. Prepares covers, prologues and indexes for the different publications carried out at the printing shop of the Criminal Justice Office as well as those done by the printing shop of the Prisons Corporation and reviews the proofs for errors as to form and fact prior to their final publication.

14. Offers legal counseling to the Secretary of Justice, Sub-Secretary of Jus-

tice, Legislative Chambers and Crime Stop Commission and government agencies.

15. Plans, directs, supervises, and coordinates the highly specialized work done by the professional personnel of the division related to the Substantive Penal Law and Procedural Penal Law.

16. Organizes, plans, supervises and coordinates the studies to be carried out by the professional and consultant personnel of the Criminal Justice Office.

17. Organizes, plans, supervises and coordinates with the Legal Education and Professional Improvement Commission of the Colegio de Abogados, the symposiums and conferences, to be held by the Criminal Justice Office during the year.

18. Supervises the purchase of books, magazines, publication and Library Collections of the Criminal Justice Office after the librarian has selected these library materials.

\* \* \* \* \* \*

Which of these duties do you consider the most important of this position:

ALL.

\* \* \* \* \* \*

signed:
Flavia Alfaro de Quevedo

CERTIFICATION:

Certify that I have read the information which appears on this form and that to the best of my knowledge is true and exact.

Signed:
Pedro Correa Velez
Assistance [sic] Secretary of Justice
Signature of Head of the Agency