USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1701 MAGALY ROLDAN-PLUMEY, Plaintiff - Appellant, v. HIRAM E. CEREZO-SUAREZ, PERSONALLY AND AS COMMISSIONER FOR MUNICIPAL AFFAIRS, ET AL., Defendants - Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. P rez-Gim nez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ _____________________ Carlos A. del Valle-Cruz, with whom Juan Rafael Gonz lez- _________________________ ______________________ Mu oz and Gonz lez Mu oz & Qui onez Tridas were on brief for _____ __________________________________ appellant. Sylvia Roger-Stefani, Assistant Solicitor General, _______________________ Department of Justice, with whom Carlos Lugo-Fiol, Solicitor ________________ General and Edda Serrano-Blasini, Deputy Solicitor General, were ____________________ on brief for appellees. ____________________ June 4, 1997 ____________________ TORRUELLA, Chief Judge. On May 4, 1994, Plaintiff- TORRUELLA, Chief Judge. ___________ Appellant Magaly Rold n-Plumey ("Rold n") brought this Section 1983 suit against Defendants-Appellees Hiram Cerezo-Su rez ("Cerezo"), Commissioner of Municipal Affairs for Puerto Rico, and Sandra Valent n ("Valent n"), Director of the Legal Division of the Office of the Commissioner of Municipal Affairs ("OCMA"), in their individual and official capacities. The suit alleged that appellees, in violation of Rold n's First Amendment rights, dismissed her from her position of Hearing Examiner (also referred to as Examining Officer) because of her political beliefs. The district court granted appellees' motion for summary judgment on the ground that party affiliation is an appropriate requirement for the effective performance of the position of Hearing Examiner and, consequently, that appellees were entitled to dismiss Rold n on those grounds. See Opinion ___ and Order, March 5, 1996, at 10. Having ruled on the merits, the district court did not address, inter alia, whether appellees __________ were entitled to qualified immunity. In contrast to the lower court, we find that the inherent duties of Rold n's position do not demonstrate policymaking attributes sufficient to subject Rold n to discharge based on her political beliefs and, accordingly, reverse the entry of summary judgment. Moreover, having found cause to set aside the judgment on the merits, we address appellees' argument that they are entitled to qualified immunity and find it wanting. -2- BACKGROUND BACKGROUND On March 1, 1992, Rold n accepted the position of Hearing Examiner with the Office of the Commissioner of Municipal Affairs. The OCMA is the main regulatory agency of Puerto Rico's municipalities and is charged with uncovering, investigating, and reporting to municipal mayors any irregularities in the municipalities' management. P.R. Laws Ann. tit. 21, 4909 (1995). The office is further obligated to provide various forms of "technical and professional assistance to the municipalities relating to their organization, administration, functions and operation." Id. 4902. The Commissioner developed a ___ confidential and trust employee plan under which employees in the OCMA were classified in accordance with the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, 1301 et seq. The _______ plan, developed by Cerezo's predecessor as Commissioner, Ismael Pag n-Colberg, designated the position of "examining officer" as a trust position. According to this document, the OCMA positions designated as trust or confidence positions were only "[t]hose positions whose holders intervene or collaborate substantially in the formulation of public policy, which directly advise or render direct services to the Commissioner of the Office of the Commissioner of Municipal Affairs." Def. Exh. IV to Motion to Summary Judgment. The classification, or job description, for the position of "Examining Officer" sets forth the position's duties as follows: -3- DUTIES OF POSITION Professional and technical work that requires great knowledge of the principles and the practice of law and the ability to direct research procedures leading to an adjudicative determination. 1. Holds administrative hearings required by the Autonomous Municipalities Act and any other necessary one[s] to carry out the duties assigned to the Commissioner. Regulates the procedures during the [performance] of the same. 2. Takes oaths and declarations, issues summons for the appearance of witnesses and the filing of reports, documents and other evidence necessary to solve cases. 3. Evaluates evidence and comes to conclusions of facts and law. 4. Carries out legal studies for the solution of cases. 5. Issues reports with his conclusions and recommendations to the Commissioner. 6. Carries out other assigned related duties. Def. Exh. V to Motion for Summary Judgment. On November 4, 1992, Pedro Rossell ("Rossell "), a member of the New Progressive Party ("NPP"), was elected governor. In March 1993, Rossell appointed Cerezo Commissioner of Municipal Affairs. In April 1993, Cerezo appointed Valent n to head the Legal Division of the OCMA. On May 6, 1994, Rold n received a dismissal letter effective that same date. STANDARD OF REVIEW STANDARD OF REVIEW We review the grant of summary judgment de novo, ________ viewing the facts, and drawing all reasonable inferences, in the -4- light most favorable to the non-movant, here Rold n, and affirming summary judgment only "if no genuine issue of material fact exists." O'Connor v. Steeves, 994 F.2d 905, 906-07 (1st ________ _______ Cir. 1993). DISCUSSION DISCUSSION I. Political Discharge Claim I. Political Discharge Claim We turn first to the grounds on which the district court granted summary judgment to Cerezo and Valent n. More than twenty years ago, a plurality of the Supreme Court held that governmental employers may not discharge an employee because of her political affiliation without showing a governmental interest sufficiently vital to outweigh the employee's First Amendment right to association. Elrod v. Burns, 427 U.S. 347, 355-56, 362 _____ _____ (1976). The plurality found that the government's interest in effective implementation of its policies can be achieved "by limiting patronage dismissals to policymaking positions." Id. at ___ 372. Justice Stewart's concurrence gave the Court a majority for the proposition that nonpolicymaking, nonconfidential employees should not be discharged on the basis of their political beliefs. Id. at 374-75 (Stewart, J., concurring in the judgment). ___ The Court next attempted to define the contours of the prohibition on political discharge in Branti v. Finkel, 445 U.S. ______ ______ 507 (1980). Instead of applying Elrod's policymaking inquiry, _____ the Branti Court relied upon a finding that political affiliation ______ is not an appropriate requirement for the effective performance of the position of assistant public defender. Id. at 518-19. ___ -5- The Branti Court again, however, imposed the burden on the ______ governmental body seeking dismissal: "[U]nless the government can demonstrate 'an overriding interest' 'of vital importance' requiring that a person's private beliefs conform to those of the hiring authority, his beliefs cannot be the sole basis for depriving him of continued public employment." Id. at 515-16 ___ (citations omitted). Of fundamental importance is the idea that "conditioning continued public employment on an employee's having obtained support from a particular political party violates the First Amendment because of 'the coercion of belief that necessarily flows from the knowledge that one must have a sponsor in the dominant party in order to retain one's job.'" Rutan v. _____ Republican Party of Illinois, 497 U.S. 62, 70 (1990) (quoting _____________________________ Branti, 445 U.S. at 516). ______ More recently, in Rutan v. Republican Party of _____ ______________________ Illinois, the Court extended the reach of the Elrod-Branti ________ _____ ______ doctrine to politically motivated promotions, transfers, and recalls. Rutan, 497 U.S. at 70. The Court reaffirmed the heavy _____ burden on government employers to show that the use of "patronage practices are narrowly tailored to further vital government interests." Id. at 74. The Court reiterated that ___ [a] government's interest in securing effective employees can be met by discharging, demoting, or transferring staff members whose work is deficient. A government's interest in securing employees who will loyally implement its policies can be adequately served by choosing or dismissing certain high-level employees on the basis of their political views. -6- Id. Unless a position is one that requires policy ___ implementation, or is confidential in nature (a claim that appellees here do not make and to which we need not allude hereafter), a government employer must rely on traditional discharge criteria. Based on this case law, this circuit has developed a two-part test for discerning when discharge based on political affiliation is permissible. First, we inquire into whether the discharging agency's functions entail "'decision making on issues where there is room for political disagreement on goals or their implementation.'" O'Connor, 994 F.2d at 910 (quoting Jim nez ________ _______ Fuentes v. Torres Gaztambide, 807 F.2d 236, 241-42 (1st Cir. _______ __________________ 1986)). If so, we next determine "whether the particular responsibilities of the plaintiff's position, within the department or agency, resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure." Id. ___ (internal quotation marks omitted); see also Jim nez Fuentes, 807 ________ _______________ F.2d at 241-42. In reviewing this second prong, we have looked to "relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders." O'Connor, 994 F.2d at 910. ________ A. Agency functions A. Agency functions -7- In her opposition to appellees' motion for summary judgment, Rold n conceded that OCMA is an agency whose functions require "'decision making on issues where there is room for political disagreement on goals or their implementation.'" Id. ___ For the purposes of this appeal, therefore, we consider the first prong satisfied. B. Whether the position involves policymaking B. Whether the position involves policymaking Under the second prong, the question is whether the responsibilities of the position of Hearing Examiner resemble "a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." Jim nez _______ Fuentes, 807 F.2d at 242. We have held time and again that a _______ court, in making this determination, is to look only to the duties inherent to the position and is not to consider the actual functions of either past or present officeholders. See id.; see ___ ___ ___ also O'Connor, 994 F.2d at 911 ("[T]he analysis must focus upon ____ ________ the 'powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office.'"); Cordero v. Jes s-M ndez, 867 F.2d 1, 9 (1st Cir. 1989); Romero _______ ____________ ______ Feliciano v. Torres Gaztambide, 836 F.2d 1, 3 (1st Cir. 1987); De _________ _________________ __ Abadia v. Izquierdo Mora, 792 F.2d 1187, 1192 (1st Cir. 1986). ______ ______________ We consider the job description to be the best, and sometimes dispositive, source for determining the position's inherent functions. See Ortiz Pi ero v. Rivera Arroyo, 84 F.3d 7, 13 (1st ___ ____________ _____________ Cir. 1996) (stating that "written, signed job descriptions may -8- provide highly probative evidence as to the responsibilities inherent in a particular government position, and may even prove dispositive"); Romero Feliciano, 836 F.2d at 3 (recognizing that ________________ "we have considered the OP-16 dispositive in . . . Puerto Rico political discrimination cases"); M ndez Palou v. Rohena _____________ ______ Betancourt, 813 F.2d 1255, 1260 (1st Cir. 1987) ("Whenever __________ possible, we will rely upon this document because it contains precisely the information we need concerning the position's inherent powers . . . ."). The Hearing Examiner job description details five specific responsibilities and designates a further responsibility to "carr[y] out other assigned related duties." The five well- defined responsibilities make clear that the position of Hearing Examiner leaves little room for free-ranging actions independent of their limited scope. The narrow duties require application of technical and professional skills in evaluating facts and researching law. They are not broad and open-ended, and do not leave room for discretionary policymaking or policy implementation. Nor are they "hazily defined." See Alfaro de ___ __________ Quevedo v. De Jes s Schuck, 556 F.2d 591, 593 (1st Cir. 1977). _______ ________________ The narrowly circumscribed duties permit the officeholder the opportunity to identify and investigate irregularities, but do not convey power or discretion to take any action as a result of these findings. Indeed, in their brief, appellees recognize that "plaintiff's position as described in her job description seemed -9- to involve technical and professional skills." Appellees' Brief at 20. In addition, the limited nature of the position differs substantially from most of those positions for which we have previously found political affiliation to be an appropriate requirement. For instance, in Agosto-de-Feliciano v. Aponte- ___________________ _______ Roque, 889 F.2d 1209, 1213 (1st Cir. 1989), we reviewed four _____ positions to determine the appropriateness of political affiliation. The job description of the first position listed twenty-six responsibilities including supervising employees, representing the regional director at public meetings, and overseeing the respective office when the director was absent. Id. The second position under review required the officeholder ___ to act as a liaison between the Department of Public Education and private schools, to coordinate a teaching program in the project school, and to direct a regionwide committee on school organization. Id. The third position consisted of twenty-three ___ responsibilities, requiring the officeholder to survey needs, develop work plans, evaluate curricula and training, manage vocational education, and supervise student organizations. Id. ___ The position also included a supervisory component. Id. ___ Finally, the job description for the fourth position listed twenty-one broadly stated duties, including budget administration, oversight of programs relating to school needs, transportation, and student services, and evaluation of personnel. Id. at 1214-15. These high-level positions, with ___ -10- their numerous, loosely defined responsibilities, allowed the officeholders considerable power and discretion in the management of Puerto Rico's Department of Education. They included oversight, evaluation, and revision of programs as well as supervision of personnel. Some allowed the officeholder to act in place of department heads. The circumscribed list of responsibilities of the position of Hearing Examiner grants the officeholder no such broadly defined powers. In O'Connor v. Steeves, we found that the position of ________ _______ superintendent, which gave the officeholder responsibility for the administration of all departments of city government and required policymaking, acting as a city representative, and supervising personnel, all duties absent here, was one for which political affiliation was an appropriate consideration. O'Connor, 994 F.2d at 911. ________ In the seminal political discrimination case, Jim nez _______ Fuentes v. Torres Gaztambide, 807 F.2d 236 (1st Cir. 1986) (en _______ _________________ banc), this court reviewed the claims of plaintiffs who had been discharged from their positions as Regional Directors of the Puerto Rico Urban Development and Housing Corporation ("CRUV"), attached to the Department of Housing of the Commonwealth of Puerto Rico. Id. at 237-38. Approximately 3,000 of the 3,600 ___ CRUV employees served under the disputed positions. Id. at 243. ___ The job descriptions consisted of twenty duties, including directing, planning, and supervising the operational activities of the entire region, developing and implementing new programs or -11- discerning ways to improve existing programs, serving as spokesperson for the Executive and Associate Directors, and controlling the region's budget, all duties of a high-level policymaker. Id. at 244; see also Raffucci Alvarado v. Zayas, ___ ________ __________________ _____ 816 F.2d 818, 821-22 (1st Cir. 1987) (finding position of Social Services Regional Director sufficiently entailed policymaking to render political affiliation relevant). The position at issue here is readily distinguishable from those at issue in Jim nez Fuentes and O'Connor, and is more _______________ ________ akin to the position of Internal Auditor, which we addressed in Cordero v. Jes s-M ndez, 867 F.2d 1 (1st Cir. 1989). The _______ ____________ position of Internal Auditor did not require the officeholder to engage in policymaking decisions, but instead required that the auditor investigate the financial records of a municipality and make a report to the Mayor and Comptroller. Id. at 18. The ___ internal auditor had no authority to correct the mistakes he was charged to investigate. Id. ___ As in Cordero, the position at issue here is that of a _______ mere "technocrat." Id.; see also De Choudens v. Government Dev. ___ ________ ___________ _______________ Bank of Puerto Rico, 801 F.2d 5, 9-10 (1st Cir. 1986). A Hearing ___________________ Examiner is charged only with investigating and holding hearings into possible irregularities in municipal functions, and reporting them to the Commissioner, in whom authority rests to take action. Considering these five enumerated duties, we find that they require technical and professional skills and do not provide discretion to formulate or implement policy. See ___ -12- generally De Choudens, 801 F.2d at 9-10. Accordingly, political _________ ___________ affiliation is not an appropriate requirement for the position. Moreover, a review of the indicia we have typically considered material to this determination further suggests that a Hearing Examiner is not a policymaker. With regard to relative pay, the salary for Hearing Examiner is the fifth highest of the 13 levels on the OCMA pay scale, not including the Commissioner. The documents submitted on summary judgment do not indicate the number of employees filling each level of the scale. Thus, while the position is ranked fifth, a significant number of actual employees may be paid more than the Hearing Examiner. Moreover, the trust classification is fifth-tier, among eleven trust positions in the OCMA. Although the position is of a quasi- adjudicative nature, it does not require that an officeholder possess a law degree. The position carries no supervisory responsibilities. The duties neither require any public appearances nor grant authority to speak on the Commissioner's behalf. Contact with elected officials appears to take place only in the context of a hearing, and in no other context does a Hearing Examiner act as a public spokesperson for or representative of her agency. Appellees attempt to maneuver around the job description's inherent duties by pointing to item number 61 on the job description, claiming that the possibility of being  ____________________ 1 Item number 6 states that the office holder "[c]arries out other assigned duties." -13- assigned related tasks transforms the position into one with broad powers. The summary judgment record indicates that appellees presented two exhibits, in addition to the job description, to support this contention. The first of these, Exhibit VI, appears to be a listing of correspondence received by the Office of Legal Affairs containing inquiries regarding various municipal concerns. These inquiries were assigned to Rold n for resolution. The last date on which any of the tasks on this list were assigned to Rold n is September 24, 1992. The other exhibit, Exhibit VII, suggests that, as of July 28, 1992, Rold n was assigned by Cerezo's predecessor to monitor the status of amendments to the Autonomous Municipalities Act. We note that appellees did not argue to the district court, as they do on appeal, that the duties set forth in Exhibits VI and VII were assigned as "other [] related duties" pursuant to item six of the job description, and thus fall within the scope of the court's analysis of "inherent duties." Nevertheless, because the district court took into consideration the documents in Exhibits VI and VII, we address appellees' contention here. In reviewing the nature of the tasks assigned to Rold n by Cerezo's predecessor, it is apparent that they were not related to the inherent duties of Hearing Examiner. Instead, these exhibits are of the very type we have consistently held are not to be considered in the process of determining whether a position entails policymaking. We look only to the inherent duties of the position under review and do not consider the -14- actual tasks performed by a present or past officeholder. See ___ O'Connor, 994 F.2d at 911; Jim nez Fuentes, 807 F.2d at 242. The ________ _______________ inherent duties of a Hearing Examiner relate only to investigating and administering hearings regarding irregularities and do not encompass providing legal advice, or analyzing, developing, or advising the Commissioner on proposed or actual legislation. We certainly cannot allow a catch-all provision such as that found in Item 6 to convert all assigned tasks into ___ inherent duties. We conclude that the duties set forth in Exhibits VI and VII, which were assigned to Rold n during her tenure as a Hearing Examiner, are not tasks related to her position and thus cannot be properly characterized as assigned in accordance with item number 6. They are actual duties performed by a past officeholder, and not inherent duties. We recognize that, in past cases, we have granted a modicum of deference to the Puerto Rico legislature's designation of a particular position as "trust" or "confidential." See, ___ e.g., Figueroa-Rodr guez v. L pez-Rivera, 878 F.2d 1478, 1481 ____ __________________ ____________ (1st Cir. 1989); Juarbe-Angueira v. Arias, 831 F.2d 11, 14 (1st _______________ _____ Cir. 1987); Raffucci Alvarado, 816 F.2d at 822; Jim nez Fuentes, _________________ _______________ 807 F.2d at 246. We accorded deference because (a) Puerto Rico's own civil service system permits a fairly small number of positions (no more than 25 per agency) to be classified as confidential (i.e., potentially subject to ____ politically-based discharge), P.R. Laws Ann. tit. 3, 1351 (1978 & Supp. 1987); (b) the personnel law bases the classification of a confidential position on criteria similar to those enumerated in Elrod and Branti, _____ ______ (whether the job involves "formulation of -15- public policy," P.R. Laws Ann. tit. 3,  1350, or "direct service to the head or subhead of the agency which require a high degree of personal trust," P.R. Personnel Bylaws: Areas Essential to the Merit Principle, 5.2 (1976)); and (c) the legislators and administrators are more familiar with the issues and subjects that potentially may affix a particular job at a particular time with a "political charge." Figueroa-Rodr guez, 878 F.2d at 1481. Nevertheless, we decline __________________ to grant deference to the designation of Hearing Examiner as a "confidential" position here, when the plan that designated the position as confidential took into consideration the five specific duties discussed above and merely suggested that the Hearing Examiner "has broad and considerable freedom to exercise initiative and his own judgment in the performance of his work." See Def. Exh. IV to Motion for Summary Judgment. We have already ___ considered the job duties of the position above and found them insufficient to indicate that the position entails policymaking. Having "freedom to exercise . . . [one's] judgment in the performance of [one's] work" does not go beyond our earlier consideration of the position and does not support appellees' contention that the position involves the use of broad discretion. In addition, that the same plan labels drivers and at least two tiers of secretaries as trust or confidential employees suggests that these categories are overly broad. Based on the summary judgment record, we hold that the position of Hearing Examiner is not one for which party affiliation is an appropriate requirement. II. Qualified Immunity II. Qualified Immunity -16- In their request for summary judgment below, appellees contended, as they do on appeal, that they are entitled to summary judgment on the basis of qualified immunity. The doctrine of qualified immunity protects defendants in their individual capacities from liability for money damages. "Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory authority or constitutional rights of which a reasonable person would have known." Nereida-Gonz lez v. Tirado- ________________ _______ Delgado, 990 F.2d 701, 704 (1st Cir. 1993). In the context of _______ political discrimination charges, "a defendant enjoys 'qualified immunity' as long as the job in question 'potentially concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication.'" Figueroa-Rodr guez, __________________ 878 F.2d at 1480 (quoting M ndez-Palou v. Rohena-Betancourt, 813 ____________ _________________ F.2d 1255, 1259 (1st Cir. 1987)). In earlier political discrimination cases, we found defendants entitled to qualified immunity because their allegedly unconstitutional actions took place prior to the development of clearly established law in this area. See, e.g., Nereida- ___ ____ ________ Gonz lez, 990 F.2d at 704 (granting defendants qualified immunity ________ because prior to 1989, a period that encompassed defendants' allegedly unconstitutional demotions and transfers, it was not clear whether Elrod and Branti applied); Valiente v. Rivera, 966 _____ ______ ________ ______ -17- F.2d 21, 23 (1st Cir. 1992) (same); N ez-Soto v. Alvarado, 918 __________ ________ F.2d 1029 (1st Cir. 1990) (state of the law in political discrimination cases was not clearly established in 1985); Figueroa-Rodr guez, 863 F.2d at 1040 (recognizing that although __________________ Elrod and Branti clearly prohibited discharge of non-policymaking _____ ______ state employees for partisan reasons, this circuit had yet to delineate the scope of positions for which political affiliation was appropriate); De Abadia, 792 F.2d at 1190 (noting that Elrod _________ _____ and Branti marked a dramatic departure from prior law and further ______ observing that an "official cannot be expected to predict the future course of constitutional law" (internal quotation marks omitted)). This case is different. Appellees discharged Rold n on May 6, 1994. The contours of the law regarding discharge based on party affiliation grew much clearer in the late 1980s and early 1990s. By 1993, this circuit had decided two waves of political discrimination cases. At the time appellees discharged Rold n, this circuit's law regarding discharge based on political discrimination was indeed clearly established. To be sure, the law may still be blurred around the edges. But this is not a borderline case. In determining entitlement to the qualified immunity defense in the political discrimination context, we look only to the inherent duties of a position and ask whether the defendant could reasonably believe the position in question was one that "'potentially concerned matters of partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential -18- information, or official communication.'" Figueroa-Rodr guez, __________________ 878 F.2d at 1480. We have already found that the inherent duties of the position were limited to discrete, technical responsibilities that did not involve policymaking or policy implementation. We do not believe that appellees could reasonably believe that the five specified duties of the position in any way provided Rold n with discretion to devise or implement policy. Assigning her with a duty related to those functions _______ would not expand her discretion in the position. As discussed above, the additional tasks assigned to Rold n, on which appellees rely, were not inherent to the position nor can they be bootstrapped into the position through the device of item number 6. That the defendants might have considered the additional duties assigned to Rold n as part of the duties inherent in the position of Hearing Examiner appears unreasonable based on the record at the summary judgment stage. We note that should defendants muster convincing evidence at trial to show that the function of a typical Hearing Examiner _______ includes following the status of legislation and providing legal assistance directly to the municipalities and that the position has traditionally been perceived as encompassing these tasks, they may or may not be entitled to qualified immunity. They are not, however, entitled to summary judgment on qualified immunity grounds. Appellees suggest that one of the cases on which the district court relied, Alfaro de Quevedo v. De Jes s Schuck, 556 _________________ _______________ -19- F.2d 591 (1st Cir. 1977), is analogous to the instant case and warrants the opposite conclusion. The district court also relied on another case that may seem to involve a position similar to that of a Hearing Examiner. See Gonz lez-Gonz lez v. Zayas, 878 ___ _________________ _____ F.2d 1478 (1st Cir. 1989) (en banc). Those cases are distinguishable on two grounds. First, the positions at issue in those cases involved considerable discretion to make and implement policy. The position at issue in Alfaro de Quevedo, the Director of the __________________ Office of Criminal Justice, required, inter alia, the ____________ officeholder to advise "the Secretary of Justice on all pending legislation affecting crimes and law enforcement," id. at 593, ___ draw up proposed legislation, prepare an annual budget, supervise the staff of the Office of Criminal Justice, and prepare a Proposed Code of Criminal Justice for Puerto Rico. Id. The ___ position "gave [the officeholder] a broad discretion to carry out hazily defined purposes and to render advice to the Secretary in an area that is far from noncontroversial." Id. at 593. The ___ position at issue in Gonz lez-Gonz lez was that of the Director _________________ of the Board of Appeals of Puerto Rico's Department of Social Services. See Gonz lez-Gonz lez, 878 F.2d at 1482. The position ___ _________________ duties were, among others, to supervise 31 employees who worked for the Board, to establish procedures to hold hearings on appeals, to analyze and make final decisions on all appeals, to prepare an annual budget, and to recommend rule changes to the Directors of the various Social Services programs. Id. In ___ -20- addition to any adjudicatory tasks, this position entailed broad administrative, policymaking, and supervisory duties. Id. at ___ 1483. As our analysis indicates, the broad discretion inherent in these duties is not present in the case before us. Second, Gonz lez-Gonz lez was dismissed from his post in 1985 and Alfaro de Quevedo resigned in 1973. When the defendants in those cases ousted the plaintiffs, the state of the law with respect to political firings was poorly defined. The state of the law at the time of the discharge in this case had developed markedly since the two opinions relied upon below. Because we must consider whether appellees violated a clearly established constitutional right of which a reasonable person would have been aware, at the time the adverse employment action was taken, the outcome of these two cases is not controlling on the issue of qualified immunity. We also recognize that in prior cases, we have granted qualified immunity partially because a defendant might mistakenly rely on the position's status as "confidential" or "trust" under the Puerto Rico Public Service Personnel Act, P.R. Laws Ann. tit. 3, 1301 et seq. See, e.g., Figueroa-Rodr guez, 878 F.2d at _______ ___ ____ __________________ 1481 ("[I]n the context of qualified immunity, the fact that the Commonwealth government had classified a particular job as a trust or confidence position, makes it more difficult to say that a Puerto Rican official should have known that the law 'clearly' forbids dismissal."); Juarbe-Angueira, 831 F.2d at 14 (same); _______________ Raffucci Alvarado, 816 F.2d at 821-22 (same). Based on our __________________ -21- discussion of the manner in which this and other OCMA positions were classified, we do not believe that defendants could have reasonably relied on this designation in determining that their discharge of Rold n for political reasons was consonant with her constitutional rights. CONCLUSION CONCLUSION For the foregoing reasons, we reverse and remand to the reverse remand _______ ______ district court for proceedings consistent with this opinion. -22-