Justin Lee WHITFIELD,
et al., Plaintiffs

v.

**MUNICIPALITY OF FAJARDO,**
et al., Defendants

No. CIV. 01–2647(JP).

United States District Court,
D. Puerto Rico.

Aug. 19, 2003.

John F. Nevares, Smith & Nevares, San Juan, PR, for Plaintiffs.

Etienne Totti Del Valle, Totti & Rodríguez Díaz, Hato Rey, PR, Frederic Chardón–Dubós, Landrón & Vera, LLP, San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Defendants Aníbal Meléndez Rivera, Ismael Alvarez

Monge, and María Lebrón–Ramos' Motion for Summary Judgment (docket No. 42), Co–Defendant Municipality of Fajardo's motion adopting by reference said motion (docket No. 79), Co–Defendants' motion to dismiss (docket No. 37), Plaintiffs' Motion for Summary Judgment (docket No. 69), Co–Defendant Municipality of Fajardo's opposition thereto (docket No. 78), William Mangomé's opposition thereto and request for summary judgment in his favor (docket No. 75), and Co–Defendants' Aníbal Meléndez Rivera, Ismael Alvarez Monge, and María Lebrón Ramos' opposition to Plaintiffs' motion for summary judgment (docket No. 74).

Plaintiff Justin Whitfield is an active duty serviceman for the United States Navy stationed at Roosevelt Roads Naval Station in Puerto Rico. Plaintiffs Gail and Terry Whitfield are Justin Whitfield's parents and reside in Ohio. Defendants are Aníbal Meléndez–Rivera, Mayor of Fajardo, Ismael Alvarez, Police Commissioner of the Municipality of Fajardo, who are sued both in their personal and official capacities, and police officers María Lebrón–Ramos and William Mangomé–Roldán. Plaintiff alleges that Defendant police officers shot him twice as he was running away from them, which he alleges constituted an excessive use of force as he had not provoked the officers and was unarmed. Plaintiff alleges that Defendants Aníbal Meléndez Rivera and Ismael Alvarez are responsible for the violation of his rights as they did not adopt regulations as to the proper use of firearms and train police officers accordingly.

Plaintiffs brought forth this civil rights action seeking relief under 42 U.S.C. §§ 1981, 1983 and 1985 for violations of their rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek relief under Article 1802 of the Civil Code of Puerto Rico.

On October 28, 2002, the Court dismissed Plaintiffs' conspiracy claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 and Plaintiffs' claims under 42 U.S.C. § 1981 (docket Nos. 30 and 31).

Co–Defendants now move for summary judgment, stating that Co–Defendants Aníbal Meléndez Rivera, Ismael Alvarez Monge, and the Municipality of Fajardo are not liable for supervisory liability under 42 U.S.C. § 1983. Co–Defendants state that María Lebrón Ramos and William Mangomé's actions were reasonable under the circumstances and that they are therefore protected by the doctrine of qualified immunity. Plaintiffs also move for summary judgment, alleging that Co–Defendants Aníbal Meléndez Rivera, Ismael Alvarez Monge and the Municipality of Fajardo failed to establish policies and procedures for the use of force and firearms and are therefore liable for the alleged violation of Plaintiff's constitutional rights. In addition, Plaintiff states that Co–Defendants Lebrón and Mangomé used excessive force during the arrest of Plaintiff in violation of the Fourth Amendment.

## II. FINDINGS OF FACT

1. On December 9, 2000, at about .3 a.m., Plaintiff was in the Fajardo Municipal Parking Garage with John Kawika de los Reyes.

2. On the same day at the same time, co-Defendants Lebrón and Mangomé were on the scene.

3. That night, three cars inside the Fajardo Municipal Parking Garage were burned.

4. At the time of the incident, Plaintiff and Kawika were active duty servicemen stationed at the Roosevelt Roads base in Puerto Rico.

5. Plaintiff was shot in the left leg.

6. At the time Plaintiff was shot, he was outside the parking garage on the ground level, having jumped from the third floor of the parking garage, and the police were on the third floor of the parking garage at the time of the shooting.

7. An ambulance was called and Plaintiff was taken to the hospital.

8. Administrative disciplinary proceedings were brought against Plaintiff.

9. As a result of the administrative proceedings, Plaintiff's pay grade was lowered, his pay was forfeited and his access was restricted.

### III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248; *Mack v. Great Atl. & Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct.

2505; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–1.

### IV. CONCLUSIONS OF LAW

A. **Co–Defendants Aníbal Meléndez–Rivera and Ismael Alvarez' Motion for Summary Judgment due to lack of Supervisory Liability under § 1983.**

A supervisor may be found liable under 42 U.S.C. § 1983 only on the basis of his or her own actions or omissions. *See Seekamp v. Michaud,* 109 F.3d 802, 808 (1st Cir.1997); *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996); *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989). In other words, it is insufficient to establish supervisory liability by merely establishing the existence of an employ-

ment relationship between a supervisor and a subordinate. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989). To sustain a cause of action based on a theory of supervisory liability, a plaintiff must establish that "(1) the behavior of [the supervisor's] subordinates results in a constitutional violation and (2) the supervisor's action or inaction was 'affirmatively linked' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence of the supervisor amounting to deliberate indifference.'" *Hegarty v. Somerset County,* 53 F.3d 1367, 1379–80 (1st Cir.1995) (quoting *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902–03 (1st Cir.1988)); *see also Gutiérrez–Rodríguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989). To demonstrate deliberate indifference, a plaintiff must show "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998), *cert. denied,* 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999). The "affirmative link" requirement necessitates proof that the supervisor's conduct "led inexorably to the constitutional violation." *Hegarty,* 53 F.3d at 1380 (citing *Febus–Rodríguez v. Betancourt–Lebrón,* 14 F.3d 87, 92 (1st Cir.1994)).

The First Circuit has observed that an important consideration in determining the existence of supervisory liability is whether a supervisor "was put on notice of behavior which was likely to result in the violation of ... constitutional rights." *Camilo–Robles,* 151 F.3d at 7 (quoting *Febus–Rodríguez,* 14 F.3d at 93). Supervisory liability, however, does not require a showing that the supervisor had actual knowledge of the offending behav-

ior. *See id.; see also Muñiz Souffront v. Alvarado,* 115 F.Supp.2d 237, 243 (D.Puerto Rico 2000). Rather, a supervisor may be held liable if he "formulates a policy or engages in a practice that leads to a civil rights violation committed by another." *Camilo–Robles,* 151 F.3d at 6–7; *see also Seekamp,* 109 F.3d at 808. Thus, even lacking actual knowledge of censurable conduct, a supervisor "may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 582 (1st Cir.1994) (citing *Miranda v. Muñoz,* 770 F.2d 255, 260 (1st Cir.1985)); *see also Dimarzo v. Cahill,* 575 F.2d 15, 17–18 (1st Cir.1978), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978).

Plaintiffs have moved for summary judgment, alleging that the absence of regulations as to the use of firearms in the Municipality of Fajardo constitutes gross negligence amounting to deliberate indifference, and that the Municipality and Co–Defendants are therefore liable for Co–Defendant police officers allegedly unconstitutional acts. As evidence, Plaintiffs cite the statement of Police Commissioner Ismael Alvarez. In his deposition taken January 7, 2003, Co–Defendant Alvarez was asked whether there were any written procedures for the police officers where directives are given as to the use of firearms and the use of force. He stated that:

> The regulations do not specify that a person be told when he/she is to use and when he/she is not to use, that is, I want this to be understood. That is, this is a thing for the police officer to decide when he encounters a situation. I mean, there is nothing written, there are no type of norms that tell a police officer when to use force and when he is not going to use it ... there is no practice,

nor public policy with respect to that, not verbal, nor written.

The Commonwealth of Puerto Rico's "Norms and Procedures for the Use, Bearing, Maintenance, and Disposition of Regulations Weapons", General Order 95–13 states in subsection D, Page 4, of the English Translation:

D. Guidelines for the Use of the Regulations Weapon

1. When utilizing a firearm only the minimum amount of force necessary to fulfill the mission shall be utilized.
2. The regulations weapon shall be considered a defense weapon, not an arrest tool.
3. Any other means and/or alternative shall be utilized before recurring to the use of the regulations weapon.

The parties agree that these guidelines apply to Municipal Police as well as the police of the Commonwealth of Puerto Rico. However, there is a dispute of fact as to whether the Municipality of Fajardo Police Department adopted these regulations and trained police officers in accordance with these regulations. However, Defendants state that Defendant police officers followed the guidelines at issue, indicating that the guidelines indeed had been adopted and that the officers had been trained to follow the guidelines. According to Defendants, the police officers entered the parking garage at 3 a.m. Defendants explain that it was late at night, it was dark, cars were burning, and there was a lot of smoke. Defendants state that they ordered the Plaintiff to halt and that they gave him ample opportunity to surrender, yet he continued to flee. From the police officers' perspective, what Plaintiff held in his hand was a deadly weapon and they fired accordingly to protect themselves. According to Defendants, the actions of the police officers reflect that they had been properly instructed as to the regulations regarding the use of firearms because they followed those regulations.

Plaintiffs state that the police commissioner's failure to reference these guidelines show that he did not adopt or implement General Order 95–13 and that he did not train the police officers in accordance with the regulations. In addition, they state that this failure to follow procedure was the direct cause of the constitutional violations that occurred, because Mangomé and Lebrón–Ramos would not have used excessive force had they know that the level of force employed was not appropriate given the circumstances.

■ There exists a dispute of fact as to whether Defendants adopted the applicable regulations, trained the police officers in the regulations, and whether the police officers followed those regulations in the instant incident. This is a question of fact that is proper only for the jury to decide.

To sustain a cause of action based on a theory of supervisory liability, Plaintiff must establish that the behavior of the Co-Defendant police officers resulted in a constitutional violation. The parties disagree as to whether a constitutional violation occurred. In *Graham v. Connor*, the Supreme Court held that claims of excessive force should be analyzed under the Fourth Amendment's "objective reasonableness standard." 490 U.S. 386, 388, 394, 109 S.Ct. 1865, 1868, 1870–71, 104 L.Ed.2d 443 (1989). According to *Graham*, "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. at 1872. Therefore, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. *Id.* at 396, 109 S.Ct. 1865 at 1872. The *Graham* standard

sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requir[ing] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865 at 1872. If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *See id.*

Disputes of material fact exist that prevent the court from resolving whether the police officers used excessive force and thus violated Plaintiff's constitutional rights. Officers Mangomé and Alvarez state that, upon arriving on the scene of the Fajardo Municipal Parking Garage, they noticed two people climbing that wall of the parking garage. They decided to climb the wall, and, upon arriving at the third level, they heard voices, noises, smelled smoke, and called for back up through their radios. Defendants state that Plaintiff heard the radio and began to flee. At this point, a vehicle was already on fire. The police ordered Plaintiff to halt. He jumped down to the street. When Plaintiff was on the ground, the police officers again ordered him to halt. Plaintiff turned around and was holding a dark metal object in his hand which Co–Defendant police officers understood to be a firearm. Fearing for their safety, they shot Plaintiff, who continued to flee despite his injuries. Defendants state that Plaintiff had violated the law by trespassing, that his companion, Kawika, had committed arson by setting a car on fire, and that he was fleeing the police with a dark object in his hand that they understood to be a firearm. According to Defendants, the police officers employed reasonable force given the circumstances.

According to Plaintiff, he was holding a donut shaped, darkly-colored metal engine part that could not reasonably appear to be a deadly weapon. He was standing three floors down from the officers when they noticed this part in his hand and therefore, according to Plaintiff, he did not present any threat to the officers. In addition, he states that he was shot while running away from the officers, unarmed, and with his back to the officers. He states that he was shot once in the back of his left thigh and then once again in the back of his left calf. According to Plaintiff, the only crime he was suspected of was burglarizing cars, which is not a crime that presents the threat of serious danger or infliction of harm. Plaintiff states that Defendants shot him even though he was unarmed and did not present any threat of danger.

The Court cannot apply the *Graham* test factors to the instant case because the essential underlying facts of the incident at issue are in dispute. There is a dispute of fact as to whether Plaintiff presented a threat to the safety of the officers. It is up to the jury to weigh the credibility of the conflicting testimony in this case.

To sustain a cause of action based on a theory of supervisory liability, a plaintiff must establish that "(1) the behavior of [the supervisor's] subordinates results in a constitutional violation and (2) the supervisor's action or inaction was 'affirmatively linked' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence of the supervisor amounting to deliberate indifference.'" *Hegarty v. Somerset County,* 53 F.3d 1367, 1379–80 (1st Cir.1995) (quoting *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 902–03 (1st Cir.1988)); *see also Gutiérrez–*

*Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989). In this case, disputes of fact prevent the Court from determining whether a constitutional violation occurred and whether Co–Defendants' actions can be characterized as gross negligence amounting to deliberate indifference. Therefore, the Court **DENIES** Plaintiffs' motion for summary judgment (docket No. 69) and **DENIES** Co–Defendants' motion for summary judgment as to supervisory liability (docket No. 42).

### B. Co–Defendants Aníbal Meléndez–Rivera and Ismael Alvarez' Motion to Dismiss based on Qualified Immunity.

■ The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58, 65 (1st Cir. 1997). This defense is designed to create a rebuttable presumption of immunity from personal liability to cover all executive officers that perform discretionary functions. *See id.; Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

■ Government officials are generally immune from suit when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Furthermore, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Acevedo–García v. Vera–Monroig*, 204 F.3d 1, 10 (1st Cir. 2000).

■ The test for determining whether a government official is entitled to qualified immunity has three prongs. First, the Court must decide whether a Constitutional violation has occurred. Second, the Court must determine, as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation. *Hilaire v. Laconia*, 71 F.3d 20 (1st Cir.1995). Third, if it finds that said right was clearly established, the question then remains whether a similarly situated official reasonably "should have understood that the challenged conduct violated" that right. *Id.* at 24.

■ In order to defeat the qualified immunity defense, a plaintiff must show that the defendant-official knew or reasonably should have known that the actions he took within his sphere of official responsibility would violate the constitutional rights of the people affected by his actions. *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 997, n. 6, 43 L.Ed.2d 214 (1975); *see also Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). A plaintiff may not overcome the defense by alleging, even if fortified with evidence, that the governmental official acted in a malicious manner or in some way was improperly motivated. Evidence concerning the defendant's subjective intent is no longer relevant or part of the qualified immunity defense. *Harlow*, 457 U.S. at 817, 102 S.Ct. 2727; *Crawford–El*, 523 U.S. at 588, 118 S.Ct. 1584; *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992).

Here, the Plaintiffs have satisfied the first prong of the qualified immunity test by alleging that Defendants violated their Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the U.S. Constitution. Second, these rights were clearly established at the time of the alleged violation. Thus, the key inquiry is whether an officer in a situation similar to that of

Defendants María Lebrón–Ramos and William Mangomé–Roldán reasonably should have understood that his or her choice to shoot Plaintiff would violate those constitutional rights. *See Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 2157, 150 L.Ed.2d 272 (2001).

The Court acknowledges that, under *Saucier v. Katz,* an officer's actions may be reasonable when similar action taken by a non-officer would not be, because "police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id.* at 205, 121 S.Ct. 2151. The officer is entitled to the qualified immunity defense if her mistake as to what the law requires was reasonable. *See id.* However, as discussed at length in the preceding section, Plaintiff has stated that the actions of the police officers are not reasonable for purposes of a qualified immunity inquiry. Plaintiff states that he was running away from the officers, that he did not commit a crime that would present a threat of harm, that he was unarmed, that he did not make any threatening movements, and that the entry point of the bullet was in the back of his body. Plaintiff has raised a triable issue of fact regarding a potentially unreasonable police action. *See Acevedo–García v. Vera–Monroig,* 204 F.3d 1, 6 (1st Cir. 2000). Accordingly, the Court **DENIES** Co–Defendants' Motion to Dismiss on the basis of qualified immunity at this time (docket No. 42) and William Mangomé's motion for summary judgment on the grounds of qualified immunity (docket No. 75).

### C. Co–Defendants' Motion to Dismiss Plaintiffs' Claims under the Eighth Amendment

Co–Defendants Aníbal Meléndez Rivera, Ismael Alvarez, and María Lebrón Ramos have brought a separate motion to dismiss Plaintiffs' claims under the Eighth Amendment, stating that Plaintiffs have failed to state a claim for a violation of a clearly established right under the constitution (docket No. 37). The Eighth Amendment of the United States Constitution states that, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Plaintiffs have failed to plead factual allegations alleging that they were subjected to excessive force while in prison. Therefore, as Plaintiffs have failed to state a claim upon which relief can be granted under the Eighth Amendment, the Court **GRANTS** Co–Defendants' motion (docket No. 37) and **DISMISSES WITH PREJUDICE** said claim against all Co–Defendants.

## V. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss claims against them brought under the Eighth Amendment (docket No. 37), **DENIES** Co–Defendants' motion for summary judgment (docket No. 42), **DENIES** Co–Defendant William Mangomé's motion for summary judgment (docket No. 75), and **DENIES** Plaintiffs' motion for summary judgment (docket No. 69).

**IT IS SO ORDERED.**