<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 99-1137

                LUIS A. ACEVEDO-GARCIA, ET AL.,

                     Plaintiffs, Appellees,

                               v.

                 ROBERTO VERA-MONROIG, ET AL.,

                    Defendants, Appellants.

         APPEAL FROM THE UNITED STATES DISTRICT COURT
                                
               FOR THE DISTRICT OF PUERTO RICO
                                
      [Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
                Coffin, Senior Circuit Judge,
                                
                   and Lipez, Circuit Judge
                                
                                
                                
                                
    Orlando Fernndez, with whom Juan Carlos Garay and Garcia &
Fernndez were on brief, for appellants Roberto Vera-Monroig and
Irma Gonzlez in their personal capacities.
    Johanna M. Emmanuelli-Huertas, with whom Pedro E. Ortiz
Alvarez was on brief, for appellants Municipality of Adjuntas and
Roberto Vera-Monroig and Irma Gonzlez in their official
capacities.
    Israel Roldn-Gonzlez for appellees.

February 17, 2000

                                
                                

 LIPEZ, Circuit Judge.  This case requires us to consider
claims of immunity from suit and liability raised by Roberto Vera-
Monroig, the mayor of Adjuntas in Puerto Rico,  Irma Gonzlez,
Adjuntas's Director of Human Resources, and the municipality of
Adjuntas in response to a lawsuit filed by eighty-eight former and
current employees of the municipality, all members of the New
Progressive Party ("NPP"), in the wake of an election in November
1996.  Alleging violations of their First, Fifth, and Fourteenth
Amendment rights pursuant to 42 U.S.C.  1983, the plaintiffs fall
into two groups: those who allege that they were discharged from
their positions and replaced with workers from the mayor's
political party; and those who allege that they suffered changed
work conditions and responsibilities, including removal of job
functions, relocation to distant or substandard office facilities,  
assignment of menial duties to supervisory staff, and restrictions
on bathroom breaks.  These actions occurred after the election of
Mayor Vera of the Popular Democratic Party ("PDP") in November 1996
and almost exclusively affected employees affiliated with the NPP.
 The individual defendants sought summary judgment from
the district court on the basis of absolute immunity for their
legislative activities and qualified immunity for the performance
of discretionary government functions.  The municipality sought
summary judgment on the grounds that liability was unavailable
under  1983 because the plaintiffs had not established a policy of
harassment and because the municipality followed the laws of Puerto
Rico.  The defendants also moved for summary judgment on more
traditional grounds, arguing that the plaintiffs failed to provide
sufficient evidence of discrimination based on political
affiliation to warrant a jury trial.  The district court rejected
the absolute and qualified immunity defenses of the individual
defendants and the grounds asserted by the municipality for summary
judgment, thereby prompting this appeal.  See Acevedo-Garcia v.
Vera-Monroig, 30 F. Supp. 2d 141 (D.P.R. 1998).   
 We affirm the denial of summary judgment for two reasons:
(1) the district court's ruling on the unavailability of absolute
immunity for the non-legislative acts of the individual defendants
was correct; and (2) we lack jurisdiction to consider the
challenges to the district court's rulings on qualified immunity
and municipal liability.
                         I.  BACKGROUND
A. Factual Summary
 Drawing upon the district court's opinion, we first set
forth the uncontested facts.  We then set forth the contested facts
in the light most favorable to the plaintiffs, cognizant of the
principle that we must take the record in the light most favorable
to the party opposing summary judgment.  See Buenrostro v. Collazo,
973 F.3d 39, 41 (1st Cir. 1992).      
 1.  Uncontested Facts  
 Mayor Vera of the PDP won the November 1996 elections in
Adjuntas.  See Acevedo-Garcia, 30 F. Supp. 2d at 143-44.  The
previous mayor had been a member of the NPP, and during his tenure
from 1989 to 1997 only two of the 114 employees he hired had been
members of the PDP.  According to an April 1996 audit report from
the Puerto Rico Comptroller's Office, Adjuntas had operated with an
annual deficit of at least $1,000,000 for over a decade.  Mayor
Vera requested a further financial study of municipal operations
from a private certified public accountant.  The financial report
prepared by the accountant showed a cumulative deficit of over
$5,000,000 as well as long-term debt of $2,000,000.  Mayor Vera
decided that the municipal departments were overstaffed and that
the municipality could not maintain the same levels of employment.  
He hired a private human resources consulting firm to evaluate all
personnel files and prepare a layoff plan.  See id. at 144.
 Pursuant to Puerto Rican law, P.R. Laws Ann. tit. 21,
4551, the Mayor submitted the layoff plan (Ordinance No. 25) to
the Adjuntas Municipal Assembly for approval; the Assembly approved
it in April 1997.  The layoff plan detailed procedures for the
selection of employees for discharge and any ensuing appeals of the
municipality's decisions.  See id.  After meeting with the
municipal officials and the private consultants responsible for the
financial study and layoff plan, Mayor Vera instructed his staff to
implement the plan.  Municipal staff evaluated personnel files to
determine seniority, notified employees of their seniority status,
and provided an opportunity for employees to contest their status.  
On September 11, 1997, letters of severance were sent to affected
employees, informing them of their anticipated discharge and their
right to appeal the decision to the Personnel Administration
Systems Board of Appeals.  Municipal officials posted employee
seniority status and listed employees affected by the layoff plan.  
See id.  Employees listed for termination received a second letter
informing them again of their right to appeal.  See id. at 145.
 Pursuant to Puerto Rican law, the elimination of
municipal positions occurs through a legislative act.  On November
19, 1997, the municipality enacted Ordinance No. 20 which
eliminated 102 positions.  See id. at 144.  Almost all of the
employees discharged were members of the NPP.  After the layoff,
Mayor Vera hired 77 new contract employees for positions in state-
funded programs.  See id. at 145.  Most of the contract workers
were affiliated with the PDP.   
 2.  Contested Facts
 While the plaintiffs concede that the defendants' actions
were taken pursuant to the layoff plan, they claim that the
defendants implemented the layoff plan in a discriminatory manner.  
The municipality did not always observe the plan's seniority
criteria, sometimes retaining employees with less seniority than
the plaintiffs who were fired.  Moreover, the most senior
terminated employees were not always offered open municipal
positions for which they qualified, contrary to the provisions of
the plan.  Indeed, many whose positions were eliminated were
replaced by less senior contract workers from the PDP who performed
the same job functions but under different titles.  Plaintiffs who
retained their positions were treated differently than PDP workers
while they remained on the job.  They experienced a variety of
indignities, such as deprivation of job functions, bathroom breaks,
and office furniture.  See id.
B.  The District Court's Decision
 In a lengthy written opinion, the district court rejected
all of the immunity and municipal liability defenses.  The
individual defendants were not entitled to immunity for legislative
acts because the alleged political discrimination took place in the
administration of the layoff plan and not in its legislative
adoption.  See id. at 148.  The municipality could not prevail on
summary judgment because its liability hinged on disputed material
facts.  See id. at 152.  
 In rejecting the qualified immunity defense of the
individual defendants, the court first noted that the defendants
would be shielded by qualified immunity if the jobs in question
"potentially concerned matters of a partisan political interest and
involved at least a modicum of policymaking responsibility, access
to confidential information, or official communication."  Id. at
149 (quoting Figueroa-Rodriguez v. Lopez-Rivera, 878 F.2d 1478,
1480 (1st Cir. 1989)).  The defendants, however, did not invoke
qualified immunity because of the nature of the plaintiffs' jobs.  
Instead, Mayor Vera and Director Gonzlez argued that they were
entitled to qualified immunity because they "acted in an
objectively reasonable manner and in conformance with relevant
legal standards by proposing and implementing the Layoff Plan based
on Puerto Rico Law 81."
 The court found this argument legally insufficient: "Even
if the Court 'objectively' considers the fact that Defendants
allegedly followed Law 81 in the analysis of qualified immunity,
Plaintiffs have proffered evidence of a triable issue of fact
regarding a potentially discriminatory application of the Layoff
Plan."  Id.   The court's finding of a triable issue of fact on
political motivation applied both to the claims of plaintiffs who
had lost their jobs and plaintiffs who claimed political harassment
because of changes in their work conditions and responsibilities.  
In addition, by rejecting qualified immunity for the political
harassment claims of plaintiffs who still had jobs, the court
implicitly determined that the law protecting them from the
politically-motivated changes in work conditions and
responsibilities was "clearly established."  See Harlow v.
Fitzgerald, 457 U.S. 800, 818-19 (1982) ("If the law was clearly
established, the immunity defense ordinarily should fail . . . .").  
 After disposing of the qualified immunity issues, the
court turned to the defendants' traditional summary judgment
argument that the individual plaintiffs had not generated genuine
issues of material fact on either their termination or political
harassment claims.  With respect to the allegations of unlawful
termination, the trial court denied the defendants summary judgment
as to the claims of seven of the plaintiffs.  For this group of
claims, the court found that the defendants' replacement of NPP
members with PDP members in the same job function but with a
different title created a triable issue of fact as to whether the
conduct had been motivated by political discrimination.  See id. at
154.  For the remaining plaintiffs alleging unlawful termination,
the trial court requested that they submit additional evidence
indicating the job duties of positions created after January 1,
1997, and the qualifications of the plaintiffs to fill those
positions.  See id. at 155.  
 The trial court then evaluated which plaintiffs had
offered sufficient evidence of political harassment to withstand
summary judgment.  The court found that thirty plaintiffs had put
forward some affirmative evidence that they were harassed on the
basis of political affiliation after the new administration took
office.  See id. at 156-57.  The defendants countered with evidence
that the alleged campaign of harassment represented "legitimate
efforts to enable the Municipality to be more efficient."  After
considering this evidence, the court concluded that summary
judgment should be granted for defendants as to the claims of two
of the plaintiffs who "only allege claims relating to the use of
the telephone, the timing of breakfast breaks, and the use of sign
in sheets."  Id. at 158.  The court concluded that these policy
changes were founded on legitimate municipal needs and that the
changes would have been made regardless of political affiliation.  
These two claims were the only claims dismissed by the district
court.
 The court denied summary judgment to the defendants for
the thirty remaining plaintiffs who had offered evidence of
harassment.  These plaintiffs had provided evidence of "further
harassment, including that their job functions were decreased or
eliminated, that they were forced to do menial work not related to
the job functions, that they were not allowed to go to the bathroom
and/or that the bathroom was not always available, and that they
were not allowed to take breakfast breaks."  Id.  The court found
that these allegations were "sufficient to state a claim for
political harassment under Agosto-de-Feliciano and Rutan" because
a finder of fact could reasonably conclude that their positions
were made "unreasonably inferior to the norm" compared to similarly
situated PDP employees.
 The individual defendants and the municipality filed this
appeal, seeking reversal of the district court's determinations on
absolute immunity, qualified immunity, and municipal liability.  
Although defendants do not formally challenge the court's denial of
summary judgment on the traditional evidentiary sufficiency grounds
for the claims of thirty-one of the eighty-eight plaintiffs, they  
fail to appreciate the relevance of the court's "triable issue of
fact" determinations to the availability of an appeal from the
denial of a request for summary judgment on the basis of qualified
immunity.  Ordinarily, the denial of summary judgment is not
appealable.  See Buenrostro v. Collazo, 973 F.3d 39, 41 (1st Cir.
1992).  However, review is sometimes available for the denial of
summary judgment on immunity grounds because the immunity
encompasses immunity from both suit and liability.  See Mitchell v.
Forsyth, 472 U.S. 511, 525-27 (1985).  Appeal of such decisions is
limited to issues of law, such as whether an act was truly
"legislative" or whether the constitutional rights at issue were
"clearly established."  See Diaz v. Diaz Martinez, 112 F.3d 1, 3
(1st Cir. 1997) (citing Johnson v. Jones, 515 U.S. 304, 317
(1995)).  Defendants may not file an immunity appeal simply on the
ground that they did not do what the plaintiffs allege. See id.  
Such fact-based appeals inappropriately ask the appellate court to
revisit the trial court's decision that "the pretrial record sets
forth a 'genuine' issue of fact for trial."  Johnson, 515 U.S. at
319-20.  We therefore turn to the defendants' various grounds for
appeal, cognizant of these jurisdictional bars.
                     II. ABSOLUTE IMMUNITY
 Officials acting in a legislative capacity have absolute
immunity from suit and liability under  1983.  See Romero-Barcelo
v. Hernandez-Agosto, 75 F.3d 23, 28 (1st Cir. 1996).  The function
of such immunity is "to insure that the legislative function may be
performed independently without fear of outside interference."  
Supreme Court of Virginia v. Consumers Union of the United States,
446 U.S. 719, 731 (1980); see also Forrester v. White, 484 U.S.
219, 223 (1988) ("When officials are threatened with personal
liability for acts taken pursuant to their official duties, they
may well be induced to act with an excess of caution or otherwise
to skew their decisions . . . .").  Legislative immunity applies to
local legislators as well as to their state and federal
counterparts, see Bogan v. Scott-Harris, 118 S. Ct. 966, 970-72
(1998) (reasoning that the common law had afforded this protection
and that the rationales for legislative immunity applied with equal
force to local legislators), and it applies when these officials
act "in a field where legislators traditionally have power to act."  
Tenney v. Brandhove, 341 U.S. 367, 379 (1951).  The administrative
or executive actions of legislators are not entitled to protection.  
See Bogan, 523 U.S. at 972.  "[I]mmunity is justified and defined
by the functions it protects and serves, not by the person to whom
it attaches."  Forrester, 484 U.S. at 227.  An official's bad
motivation, or "unworthy purpose," does not affect the immunity
privilege so long as the actions fall within the ambit of protected
legislative activity.  Tenney, 341 U.S. at 377; see also Rateree v.
Rockett, 852 F.2d 946, 951 (7th Cir. 1988) (A "legislator may vote
for legislation for seemingly improper reasons; nevertheless, the
rule of absolute immunity shields this conduct.").
 Defendants' claim to absolute immunity hinges on whether
the actions at issue here were legislative or administrative.  
Absolute immunity applies to "prospective, legislative-type rules"
that are general in nature.  Alexander v. Holden, 66 F.3d 62, 67
(4th Cir. 1995).  "Employment decisions generally are
administrative" except when they are "accomplished through
traditional legislative functions" such as policymaking and
budgetary restructuring that "strike at the heart of the
legislative process."  Rateree, 852 F.2d at 950-51.  Voting for
legislation, the introduction of budget plans, and signing an
ordinance into law are "quintessentially legislative" functions.  
Bogan, 118 S. Ct. at 973.
 The defendants characterize their behavior, including the
selective layoffs and restrictions on employees, as "integral steps
in the legislative process" rather than "acts of implementation,"
and they rely on the holding in Bogan in support of this claim.  
See 118 S.Ct. 966.  We are not persuaded.  In Bogan, the plaintiff
alleged that her discharge, accomplished through an ordinance
eliminating the city's Department of Health and Human Services (of
which she was the sole employee), was motivated by racial animus
and retaliation for filing a complaint against another employee who
had made racial and ethnic slurs.  The Supreme Court concluded that
absolute immunity applied because the ordinance "bore all the
hallmarks of traditional legislation."  Id. at 973.  The ordinance
"reflected a discretionary, policymaking decision" and it had
prospective impact because it eliminated a department rather than
a particular employee.  Id.  The entirety of the disputed action
was accomplished legislatively.  In the instant case, while the
ordinances adopted by Adjuntas reflected discretionary,
policymaking decisions, the defendants' alleged replacement of
discharged NPP members with PDP contract workers and acts of
political harassment did not.  Similarly, the alleged acts of
political discrimination were not "prospective"--that is, these
acts did not "reach well beyond the particular occupant of the
office," but instead targeted specific individuals affiliated with
the NPP.  Id.   
   We draw support for these conclusions from a two-part
analysis that we have adopted to determine whether an act is
legislative or administrative.  See Cutting v. Muzzey, 724 F.2d
259, 261 (1st Cir. 1984).  First, if the facts underlying the
decision are "generalizations concerning a policy or state of
affairs," the decision is legislative.  Id.  If the decision stems
from specific facts relating to particular individuals or
situations, the act is administrative.  Id.  Second, the court must
consider the "particularity of the impact of the state of action."  
Id.  "If the action involves establishment of a general policy, it
is legislative;" if it "single[s] out specifiable individuals and
affect[s] them differently from others," it is administrative.  Id.  
In Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27-28 (1st
Cir. 1994), a case conceptually similar to the instant suit, we
applied this two-part test.  There, the director of the legislative
service office for the Commonwealth of Puerto Rico discharged the
legislative librarian, a PDP member, and replaced her with an NPP
activist.  We concluded that under either test the "decision to
replace Negron--a member of the Popular Democratic Party--with a
New Progressive Party activist was administrative."  Id. at 28.   
 Vera and Gonzlez rely on the two ordinances relating to
the layoff plan to support their claim that their actions were
legislative in nature.  The Adjuntas Municipal Assembly formally
enacted the mayor's layoff plan through Ordinance 25.  A subsequent
piece of legislation, Ordinance 20, ordered the elimination of 102
specified positions in order to "enable[] the Municipality
Administration to readjust the 1997-98 Operating Budget to the
Municipality's economic reality."    
 Although these two ordinances provided a framework for
the administrative decisions of Vera and Gonzlez in implementing
the layoff plan, it is precisely those administrative decisions
that are at issue in this case.  After the enactment of Ordinance
20, the defendants' implementation of the layoff plan targeted
specific individuals.  Following the terminations, the defendants
hired contract employees for the same job function but under a
different formal title.  The replacement of NPP workers with less
senior PDP contract workers performing essentially the same
functions constituted particularized employment decisions rather
than general policymaking.  The defendants also targeted specific
individuals in the NPP and "affected them differently from others"
through restrictions on job amenities, such as bathroom access and
office furniture, and reduction of job duties.  According to the
allegations, the political harassment began prior to the enactment
of Ordinance 25 and persisted for the remaining NPP workers after
the layoff of their co-workers pursuant to Ordinance 20.  Because
the defendants' decisions stemmed from specific facts about the
party affiliation of individuals and affected particular
individuals differently from others, these actions were
administrative rather than legislative.  Legislative ratification
does not shield the defendants from liability.   
 Similarly, the defendants' contention that they are
entitled to legislative immunity because their actions in
discharging the plaintiffs were taken pursuant to Puerto Rican law
is unconvincing.  In Forrester, 484 U.S. at 230, the Supreme Court
declined to extend absolute immunity to a judge sued under  1983
for violating the Equal Protection Clause when he allegedly
discharged a probation officer based on her gender.  The Court
deemed it insignificant that Illinois law allowed judges to hire or
fire probation officers: "To conclude that, because a judge acts
within the scope of his authority, such employment decisions are
brought within the court's 'jurisdiction,' or converted into
'judicial acts,' would lift form above substance."  Id.  The same
analysis applies here -- the mandates of Puerto Rican law on layoff
procedures do not convert the defendants' conduct into legislative
acts.
                    III.  QUALIFIED IMMUNITY
 Vera and Gonzlez argue that even if they are not
entitled to legislative immunity, they are shielded from suit and
liability by the doctrine of qualified immunity.  We have no
jurisdiction to review this claim on appeal.
 The doctrine of qualified immunity protects government
officials who perform discretionary functions from suit and
liability for monetary damages under  1983.  See Roldan-Plumey v.
Cerezo-Suarez, 115 F.3d 58, 65 (1st Cir. 1997).  They are immune
when their conduct does not violate "clearly established statutory
authority or constitutional rights."  Mitchell v. Forsyth, 472 U.S.
511, 524 (1985) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818
(1982)).  "The contours of the right must be sufficiently clear
that a reasonable official would understand that what he is doing
violates that right." Anderson v. Creighton, 483 U.S. 635, 640
(1987).  
 Generally, as already noted, the denial of summary
judgment is not appealable until after a final judgment.  See
Buenrostro, 973 F.2d at 41; see also 28 U.S.C.  1291 ("[t]he
courts of appeals . . . shall have jurisdiction of appeals from all
final decisions of the district courts . . . .").  Nevertheless, an
appeal from the pre-trial denial of qualified immunity is available
when the appeal is "based on a purely legal ground," but not when
it challenges sufficiency of the evidence.   Diaz v. Diaz-Martinez,
112 F.3d 1, 3 (1st Cir. 1997).  In Stella v. Kelley, we explained
the distinction between appealable and non-appealable immunity
cases:
   [A] summary judgment order which determines
 that the pretrial record sets forth a genuine
 issue of fact, as distinguished from an order
 that determines whether certain given facts
 demonstrate, under clearly established law, a
 violation of some federally protected right,
 is not reviewable on demand.

63 F.3d at 74.  If the issue on appeal is "nothing more than
whether the evidence could support a finding that particular
conduct occurred, the question decided is not truly 'separable'
from the plaintiff's claim, and hence there is no 'final
decision.'"  Behrens v. Pelletier, 516 U.S. 299, 313 (1996); see
also Mitchell, 472 U.S. at 530.  Therefore, to decide the
availability of an appeal from the qualified immunity ruling of the
district court, we must determine whether the trial court denied
qualified immunity on the basis of an abstract issue of law or on
the existence of what it perceived as genuine issues of material
fact concerning the actions of Vera and Gonzlez.
A.  Politically-Motivated Terminations
 The district court identified seven plaintiffs who had
established a triable issue of fact as to whether they had been
fired because of their political affiliation and then replaced by
contract workers or less senior employees.  These employees
presented evidence that, although their positions were eliminated
under the layoff plan, they were effectively replaced with newly
hired PDP members who performed the same job functions (though
typically under a different title).  The court also requested
additional evidence from other plaintiffs so that it could
determine whether they had established a triable issue of fact on
political motivation.  In making these rulings, the court concluded
that the law on politically-motivated terminations was clearly
established.   
 Vera and Gonzlez concede that the law on politically-
motivated terminations is clearly established.  They argue,
however, that they are guilty of nothing more than "develop[ing] a
layoff plan and evaluat[ing] the positions to be eliminated
according to the objective criteria of seniority."  In their brief,
defendants list twenty-one "uncontested facts [regarding the layoff
process and procedures] that directly demonstrate that Mayor Vera
and Ms. Gonzlez acted reasonably."  They conclude that they acted
with "objective reasonableness," and they assert that "[t]he
district court erred, therefore, in looking at defendants'
allegedly politically discriminatory motive . . . . [R]easonability
from an objective point of view is the norm to apply in this case."  
 Defendants misunderstand the nature of the claim that
they face in this case.  For a subset of constitutional torts,
motivation or intent is an element of the cause of action.  In Tang
v. State of Rhode Island, Department of Elderly Affairs, 120 F.3d
325, 325 (1st Cir. 1997), the plaintiff alleged that she had
suffered racial discrimination and retaliation in her position as
nutritionist for the state government. The district court found the
majority of facts in dispute and deferred hearing the defendants'
motion for qualified immunity until completion of the trial.  Id.
at 326.  The defendants appealed.  In concluding that we lacked
jurisdiction because the appeal was based on a dispute over motive
and other factual matters, we responded to the defendants'
contention that subjective intent is irrelevant to qualified
immunity:  "[T]he Harlow-Anderson objective test does not
automatically resolve a qualified immunity defense in favor of the
defendant in a case of alleged racial discrimination or retaliation
. . . . a wholly objective test would wipe out many, if not most,
of these claims."  Id. at 327.  
 The reasoning in Tang applies to the claims of Vera and
Gonzlez that the district court erred in considering evidence of
their motivation.  The plaintiffs allege that they were terminated
because of their political affiliation, a constitutional claim that
has no meaning absent the allegation of impermissible motivation.  
The district court recognized this fact, concluding that the
"Defendants' emphasis on the fact that their conduct was
'objectively reasonable' because they acted pursuant to Puerto Rico
Law 81 in the Layoff Plan . . . is not sufficient to meet their
burden under the relevant legal standard and to grant them
qualified immunity."  Acevedo-Garcia, 30 F. Supp. 2d at 149.  That
was so, the court continued, because "Plaintiffs have proffered
evidence of a triable issue of fact regarding a potentially
discriminatory application of the Layoff Plan."  Id.  There was no
error in this analysis.
 Interestingly, we suggested in a footnote in Tang that
the Supreme Court might clarify the relevance of motivation in
considering a qualified immunity defense to a charge of retaliatory
motive when it heard Crawford-El v. Britton, 118 S. Ct. 1584
(1998), a case then scheduled for argument, in which the defendant
correction officer was charged with diverting the property of the
plaintiff prisoner with an intent to retaliate against him for
exercising his First Amendment rights.  See id. at 1587.  As noted
by Chief Justice Rehnquist in his dissent in Crawford-El, that
clarification did not occur.  Instead, the Supreme Court confined
its ruling to a disapproval of the requirement of the Court of
Appeals, District of Columbia Circuit, that in claims of a
constitutional tort requiring proof of the actor's unconstitutional
motive, the plaintiff must present clear and convincing evidence of
that motive.  The Court did not address the second question
presented in the petition on which the Court granted certiorari:
   In a First Amendment retaliation case against
 a government official, is the official
 entitled to qualified immunity if she asserts
 a legitimate justification for her allegedly
 retaliatory act and that justification would
 have been a reasonable basis for the act, even
 if evidence - no matter how strong - shows the
 official's actual reason for the act was
 unconstitutional?

Given the lack of an answer to this question, Chief Justice
Rehnquist concluded that "[u]nder the Court's view, only a
factfinder's ultimate determination of the motive with which he
acted will resolve this case."  Id. at 1602.
 Chief Justice Rehnquist's assessment of the law after
Crawford-El confirms the rightness of the district court's
consideration of motivation in rejecting the qualified immunity
defense of the defendants.  Because we reject the defendants' legal
argument that the district court erred in considering motivation,
we are left with a denial of summary judgment based on their
motivation.  In Stella v. Kelley, we held that we "lack the power
to inquire into . . . the fact-based question of what the evidence
does (or does not) show concerning whether the selectmen's actions
violated the asserted right -- a question that depends, in this
case, on the selectmen's motives . . . ."  63 F.3d 71, 75 (1st Cir.
1995).  The evidence relating to the defendants' motivation in
terminating plaintiffs is a factual matter and thus cannot form the
basis of an appeal from the denial of summary judgment.  See
Guilloty-Perez v. Fuentes-Agostini, 196 F.3d 293, 294 (1st Cir.
1999).
B.  Politically-Motivated Changes in Work Conditions
   and Responsibilities

 A second group of plaintiffs complain of loss of job
function, relocation to remote or inferior offices, and restricted
access to bathroom breaks and facilities.  These plaintiffs claim
that the miserable working conditions created by their supervisors
amounted to a constitutional violation.   
 In denying summary judgment for the defendants on their
political harassment claims, the district court discussed the
relevant law on political discrimination based on changes in work
conditions and responsibilities.  Specifically, it noted that we
have left unresolved the relationship between our holding in
Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir.
1989), that politically-motivated changes in work conditions and
responsibilities which make a plaintiff's situation "unreasonably
inferior to the norm for the position" violate constitutional
rights, and the Supreme Court's later decision in Rutan v.
Republican Party of Illinois, 497 U.S. 62, 75 (1990), that
"promotions, transfers, and recalls after layoffs based on
political affiliation" are examples of impermissible "deprivations
less harsh than dismissal that nevertheless press state employees
and applicants to conform their beliefs and associations to some
state-selected orthodoxy."  Acevedo-Garcia, 30 F. Supp. 2d at 156.  
Although the Rutan Court did not explicitly address the issue of
changed work conditions and responsibilities as examples of
deprivations less harsh than dismissal, it noted in dicta that,
"the First Amendment . . . already protects state employees not
only from patronage dismissals but also from 'even an act of
retaliation as trivial as failing to hold a birthday party for a
public employee . . . when intended to punish her for exercising
her free speech rights.'"  Id. at 76 n.8 (citations omitted).  It
is not clear if this language in Rutan proscribes application of
the "unreasonably inferior to the norm" standard of Agosto-de-
Feliciano to politically-motivated changes in work conditions and
responsibilities, or whether that doctrine survives Rutan,
"providing a sort of . . . intermediate First Amendment haven for
employees wounded by slings and arrows less damaging than those
[official actions] described by the Rutan court."  Nereida-Gonzlez
v. Tirado-Delgado, 990 F.2d 710, 705 (1st Cir. 1993).  In Acosto-
Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101 n.5 (1997), we
noted the possible conflict between these two cases and stated that
"we leave the resolution of any conflict in the standard for such
adverse personnel actions to some future case."
 Despite noting that "it is unclear how the First Circuit
views the Rutan dicta as affecting its "unreasonably inferior"
standard, the district court rejected the qualified immunity
defense of the defendants to the political harassment claims of the
plaintiffs, concluding that "a finder of fact could determine that
the plaintiffs here put forth clear and convincing evidence [as
required by Agosto-de-Feliciano], that their positions are
'unreasonably inferior to the norm.'" Acevedo-Garcia, 30 F. Supp.
2d at 156-58.  By applying the Agosto-de-Feliciano standard, the
court implicitly concluded that the right of the plaintiffs to be
protected from politically-motivated changes in work conditions and
responsibilities was established clearly enough to reject the
qualified immunity defense of the defendants.   
 Arguably, the defendants could have appealed from this
implicit legal conclusion of the district court relating to the
clarity of the right protecting the plaintiffs from politically-
motivated changes in work conditions and responsibilities.  In
Behrens v. Pelletier, the Supreme Court held that "summary judgment
determinations are appealable when they resolve a dispute
concerning an 'abstract issu[e] of law' relating to qualified
immunity -- typically, the issue whether the federal right
allegedly infringed was 'clearly established.'"  516 U.S. 299, 313
(1996)(internal citations omitted).  The defendants failed to frame
such an issue.  Instead, they persisted in their argument that
their conduct, viewed objectively, was reasonable and that any
consideration by the district court of evidence of a proscribed
political motive was inappropriate.  For the reasons already
stated, that argument is wrong.  The district court's denial of
summary judgment for the defendants on their immunity defense to
the political harassment claims of the plaintiffs rests, in part,
on what the district court reasonably perceived to be triable
issues of fact about the defendants' political motivation.  We have
no jurisdiction to consider such rulings on appeal.
                    IV.  MUNICIPAL LIABILITY
 In addition to suing Vera and Gonzlez in their personal
capacities, the plaintiffs sued the municipality of Adjuntas.  The
Supreme Court decision in Monell v. Department of Soc. Servs., 436
U.S. 658, 690-91 (1978) authorizes  1983 relief against
municipalities where "the action that is alleged to be
unconstitutional implements or executes a policy statement,
ordinance, regulation, or decision officially adopted and
promulgated by that body's officers."  In moving for summary
judgment, the defendant alleged that the plaintiffs had not offered
sufficient evidence that the alleged constitutional violations were
municipal policy.  The district court denied summary judgment,
finding that the "evidence [was] sufficient to show that the
alleged harassing conduct is so 'well settled and widespread' as to
attribute the custom or policy of harassment to the Municipality,"
and that the comments of municipal supervisors that the harassment
was targeted at NPP employees provides the necessary "'affirmative
link' between the harassing conduct and the policy of political
discrimination."  Acevedo-Garcia, 30 F. Supp. 2d at 152.   
 We will not evaluate this denial of summary judgment
because we do not have jurisdiction to do so.  In Swint v. Chambers
County Comm'n, 514 U.S. 35, 43 (1995), a unanimous Supreme Court
held that the denial of summary judgment based on municipal
liability is not immediately appealable.  The rationale supporting
immediate review of some qualified immunity decisions does not
extend to a municipality's defenses to  1983 claims.  In qualified
immunity, "[t]he entitlement is an immunity from suit rather than
a mere defense to liability; and like an absolute immunity, it is
effectively lost if a case is erroneously permitted to go to
trial."  Mitchell, 472 U.S. at 526.  Thus, pre-trial qualified
immunity decisions are immediately appealable as collateral orders
when the immunity claim presents a legal issue that can be decided
without considering the correctness of the plaintiff's version of
the facts.  See Johnson, 515 U.S. at 313-15.  The Swint Court ruled
that, unlike the qualified immunity entitlement, municipal defenses
under  1983 are not a right to immunity from trial but a "mere
defense to liability." Swint, 514 U.S. at 43.  As such, the
collateral order doctrine does not apply and a municipality's
defenses to suit may only be reviewed after a final judgment on the
merits.  Id.
                         V.  CONCLUSION
 For all of the reasons set forth above, we dismiss the
appeal in part for want of appellate jurisdiction and, as to the
remainder, affirm the district court's denial of summary judgment.

</body>

</html>